# Ryan v. Price.

*Bill in Equity to set aside and annul a Deed to Land.*

1. *Deed; how considered when made between parties occupying confidential relations.*—The general principle which a court of equity applies to transactions between person occupying confidential relations towards each other is not confined to cases in which there is any formal or technical fiduciary relations, but extends to all cases in which confidence is reposed by one party in the other, and the trust

[Ryan v. Price.]

is accepted under circumstances which show that the confidence was founded on intimate personal or business relations existing between the parties, which gave one party an advantage or superiority; and the validity of a deed made between and for the benefit of those standing in fiduciary relations should be scrutinized with jealous care, and the *bona fides* of such transaction and its entire freedom from fraud and undue influence should be fully shown.

2. *Same; same; case at bar; deed cancelled.*—On a bill filed to set aside a deed of gift, it was made to appear that the grantor at the time of the execution of the conveyance was an old woman 72 years of age and in feeble health, and that by the deed sought to be set aside she conveyed to a boy six years of age, who was in no way related to her by affinity or consanguinity, all of her property; that the father of the grantee in the deed had, for many years, sustained confidential relations with the grantor, was her adviser and agent, had control of her property, collected her rents, paid her taxes and insurance and other bills, and kept for her such money as she had; that upon the grantor being threatened with a law suit for slander, and being apprehensive that as a result of such suit she would be deprived of all her property, she sought the advice of her confidential adviser, the father of the grantee in the deed, held an intimate conference with him, and as the result of such conference she and the father went to her attorney, who at grantor's request prepared for her a will, in which she bequeathed all of her property to the said son of her adviser. A few days thereafter, the grantor in the present deed and her confidential adviser again went together to her attorney, and had him to prepare the deed in controversy, conveying all of the grantor's estate to the grantee therein, the infant son of her adviser, which deed the grantor signed by making her mark, in the presence of the probate judge and a friend of the grantee's father, whom the father had procured to take the deed to the grantor for her execution and acknowledgment. Shortly after the death of the grantee's father the grantor went to the office of her attorney and stating that she had been informed of the existence of a deed which was executed by her to the grantee, inquired of said attorney if she had, in fact, executed such a deed; and upon being told that she had, she expressed great surprise. *Held:* That such a deed was void and should be set aside.

APPEAL from the Chancery Court of Lauderdale.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by the appellant, Eliza H. Ryan, against the appellee, Lucian B. Price, to set aside an alleged deed of gift, executed by the complainant, conveying certain lands to the respondent. The grounds upon which the relief was asked were mental incapacity and undue influence. The facts of the case are sufficiently stated in the opinion.

Upon the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainant was not entitled to the relief prayed for, and ordered the bill dismissed. From this decree the complainant appeals, and assigns the same as error.

JOHN T. ASHCRAFT, for appellant.—1. The deed can not stand, if at the time it was made, the grantor was mentally incapable of transacting business.—*Kyle v. Perdue*, 95 Ala. 579 ; *Clark v. Kirkpatrick*, 16 Ala. 309.

2. When the issue is one of capacity or incapacity the *onus probandi* lies in every case on the party alleging the will, a deed or contract, and he must satisfy the court that it is the act of a capable grantor.—Schouler on Wills, (2 ed.), §§ 173, 174, 240.

3. The benefit derived by one who holds a confidential relation need not be strictly a personal one in order to excite suspicion; for undue advantages procured for those of his own household may in a broad sense be intended for his own benefit.—Schouler on Wills, (2 ed.), 246 ; 8 Amer. & Eng. Encyc. of Law, p 1310; *Graham v. Burch*, (Minn.) 46 N. W. Rep. 148 ; *Rankin v. Patton*, 65 Mo. 378.

4. The deed can not stand if it was procured by the fraud or undue influence of the grantor's agent, confidential friend and business adviser.—*Kyle v. Perdue*, 95 Ala. 579 ; *Burke v. Taylor*, 94 Ala. 530 ; *Bancroft v. Otis*, 91 Ala. 286; *Shipman v. Furnace*, 69 Ala. 555 ; *Waddell v. Lanier*, 62 Ala. 347 ; *Nichols v. McCarthy*, 23 Ala. 93.

5. Where the circumstances are such as to give rise to an inference of undue influence, the burden of proof is on him who claims under the deed or transfer, to rebut the presumption, and show that the gift was not obtained through means which the court must condemn; and, it is not on the party seeking to avoid it, to establish that it is fraudulent. It should, consequently, appear, (1.) That the donor understood and knew what he was doing. (2.) That the act proceeded from his own mind, or if the suggestion came from without, that it was deliberately adopted by him. (3.) That if, in carrying out his purpose, he reposed a confidence in another or relied on him for guidance, the latter did all which the acceptance of such a trust implies, viz. giving the advice and information which, if duly weighed, might operate to prevent

[Ryan v. Price.]

the execution of the act.— *Waddell v. Lanier*, 62 Ala. 347 ; *Richards v. Donner*, 72 Cal. 207.

6. A conveyance made by an illiterate, feeble, old person, in a state of excitement, will not be regarded as done with a deliberate intent and will not be treated as a conveyance in fraud of creditors; nor will the court make it a ground for refusing its aid to recover back the property.—*Nichols v. McCarthy*, 23 Atl. 93, s. c. 55 Amer. Rep. 105 ; *Norton v. Norton*, 37 N. W. Rep. 129 ; *James v. Steere*, 16 Atl. Rep. 143 ; *Churchill v. Scott*, 32 N. W. Rep. 737 ; *Oakley v. Ritchey*, 28 N. W. Rep. 448.

E. C. CROW, *contra.*—1. In *Eastis v. Montgomery*, 93 Ala. 293, it is said : "The undue influence which will avoid a will, must amount to coercion, or fraud, an influence tantamount to force or fear, and which destroys the free agency of the party, and constrains him to do what is against his will. Mere persuasion or agreement addressed to the judgment or affection in which there is no fraud or deceit, does not constitute undue influence." The same principles have been announced in the following cases : *Leeper v. Taylor*, 47 Ala. 221; *Bailey v. Litten*, 52 Ala. 283 ; *Robinson v. Moon*, 56 Ala. 241 ; *Johnson v. Armstrong*, 97 Ala. 731 ; *Knox v. Knox*, 95 Ala. 503.

2. It has been repeatedly decided by the Supreme Court of this State that "a voluntary conveyance, though void as to existing creditors, as between parties and privies is valid and operative."—*Todd v. Neal*, 49 Ala. 266 ; *Strange v. Graham*, 56 Ala. 614 ; *Means v. Hicks*, 65 Ala. 241. And the same principle is announced in Bishop on Contracts, § 81, and references therein cited.

HARALSON, J.—The principles of law governing this case are well settled by our own and other courts, may be found in the text books on the subject, and require no new and fuller discussion. We repeat them, as far as necessary, for the purposes in hand.

In *Waddell v. Lanier*, 62 Ala. 347, it was held, that where the grantor and grantee sustain relations of trust and confidence—which includes not only cases where there exists the formal and technical fiduciary relation such as guardian and ward, parent and child, attorney and client, principal and agent, but all cases in which confidence is reposed by one party in the other, and the

trust is accepted under circumstances which show that the confidence was founded on the intimate personal and business relations existing between the parties, which gave the other party an advantage or superiority—any transaction between them will be narrowly watched and closely scrutinized by a court of equity, and relief will be granted against contracts entered into between them, unless the party claiming the benefit of the contract, shows by clear and convincing proof that he acted with perfect good faith, and did not abuse or betray the confidence reposed in him; and where the donee is of superior mental capacity, or the donor of weak or feeble intellect, the presumption of fraud will require strong evidence to remove it.

In *Honey v. Hollingsworth*, 23 Ala. 690, it was said: "There may be no fraud, everything may be honest and fair; but until the act is satisfactorily accounted for, the inference of fraud, artifice, or abuse of confidence, is so strong, that we think equity should relieve against it." Of such transactions Judge Story says: "And, indeed, considering the abuses which may attend any dealings of this sort between principals and agents, a doubt has been expressed whether it would not have been wiser for the law in all cases to have prohibited them; since there must always be a conflict between duty and interest on such occasions." See also *Kyle v. Perdue*, 95 Ala. 579; *Burke v. Taylor*, 94 Ala. 530; 1 Story Eq., §§ 307, 315; 1 Perry on Trusts, §§ 168, 194. As illustrative of the rigor of the application of this doctrine in England, the case of *Andrews v. Elsworth*, 3 Gifford, 154, is frequently referred to, where a voluntary deed made by a woman "of about seventy years of age, and not incompetent, was set aside upon her death for the reason, that the deed was improvident, and because it did not appear affirmatively, that she understood the whole nature and effect of the deed. This decree was made after the death of the grantor, and in favor of volunteers, although the court found, that Elizabeth Marston, the grantor, certainly had a distinct intention to give her property to Mary Elsworth, who took it by this deed to the exclusion of all other persons." The question, as Lord Eldon said in *Hugnenin v. Beasley*, 14 Ves. 300, in a similar case, "is not whether she knew what she was doing, had done or proposed to do, but how the intention was produced."

[Ryan v. Price.]

The evidence taken in this case leaves one in doubt whether the complainant, the appellant, was mentally capable of entering into a contract or not. Much of the evidence tends to show, that she did not know what she was doing when she made the deed, and, certainly, that she did not fully understand and appreciate the act. She was seventy-two or three years old, and in feeble health; she was illiterate, being unable to read or write, and of a very excitable temperament; she had no personal property of value; and the deed conveyed all the real estate she owned, without any valuable consideration, and to a lad some six or seven years old, who was not related to her by consanguinity or affinity, nor for whom, so far as appears, she had any special fondness or affection. The property consisted of a storehouse with rooms above. She occupied and lived in one of the rooms and did her cooking in the rear, and rented out the other room; and the deed provided that she should be allowed to occupy the premises during her life. It appeared, that W. T. Price, who was the father of the boy, the donee in the deed, and the appellee, was the agent, trusted friend and adviser of the complainant, and that he had control of her property from about 1873 or 1874, till the time of his death in 1892, collecting the rents, paying the taxes, keeping the property insured, and paying appellant's small living bills; and he kept for her what little money she had. It was shown, that one Tabbie Jones occupied the front up stairs room in the building belonging to appellant; that appellant and said Tabbie had great unpleasantness on account of the bringing of an unlawful detainer suit for this room by appellant against said Tabbie, who became enraged at, and threatened to kill, appellant, and to sue her for slander for $10,000; that these threats were circulated in the community, and were communicated to appellant by one Dallas Jones, who was on friendly terms with her, who advised her to make a sham will of her property, so that Tabbie could make nothing out of her; that at these threats of violence and of litigation, appellant became greatly distressed, as all witnesses agree, and some of them say she became crazy. In this condition of mind she applied to her trusted friend Price for advice. As a result of their conference, they went together to the office of an attorney who, accustomed to advise appellant, on her application, wrote her will, in which

she gave all her property to said Lucien B. Price, the appellee, and made W. T. Price, the father of the youth and her confidential friend, her executor without bond. The attorney testified to her excited and uneasy condition of mind on account of the threats of said Tabbie, but gave his opinion, that she was sound of mind when she executed the deed. He says that when he finished writing the will, he read it over to appellant and Price, who remained during its preparation, and she said it was all right. She and he went away, and some two or three days afterwards, "complainant and Price came back to him to write an absolute deed to the property." He advised that it was unnecessary, as the will provided for the same thing that the deed would provide for. But appellant desired the deed to be written. The attorney wrote and delivered it, and they retired. The attorney also advised her not to pay any attention to Tabbie's threat, that she would not bring suit against her. The said Price, as the evidence tends to show, procured the judge of probate, and Mr. Campbell—in whose bank he was employed—to take the will and deed to appellant, which they did and she acknowledged her signature to them by a cross mark, her name having been written for her, and they attested them. Appellant testified that she had no memory of having made such a deed, and the attorney who wrote it, examined in behalf of the appellee, testified, without objection, that some time after the execution of the deed, and after Price's death, appellant came to his office, excited and weeping, and inquired if she had made a deed to appellee, stating that she had been so informed, and the witness having told her of what occurred, she fell on her knees at his knees, and expressed great surprise that there was a deed, and from her acts, declarations and conduct at the time, he was convinced she was insane or crazy; and in his opinion, Tabbie Jones' threats had great weight in influencing her to make the deed.

The proof submitted by appellee falls far short of proving satisfactorily that the deed was just, fair and equitable in every respect, as he was bound to show, (*Waddell v. Lanier, supra*); but, on the contrary, it does appear to have been an unnatural, and a hasty disposition of her property, made in terror of the threatened litigations against her. It was not such a deed, as her agent

and friend ought, under the circumstances, to have allowed her to make. He should have advised against it, as her attorney did, and have quieted her alarms, which were unreasonably and extraordinarily aroused. The fact that he allowed her to make the deed under such circumstances, that he each time went with her to her lawyer's office, and that his son was the beneficiary, all create the impression that he was instrumental in the execution of the same.

The decree of the court below is reversed, and one will be here rendered, declaring said deed null and void and of no effect.

Reversed and rendered.