# Whitten *v.* McFall *et al.*

*Bill in Equity for Partition of Lands.*

|122  619|
|130  502|

|122  619|
|132  629|

|122  619|
|135  334|

1.  *Construction of written instrument as to whether a deed or will; establishment of same by parol evidence.*—On an issue as to whether an instrument which was destroyed before his death by the person executing it was a deed or a will, making a testamentary gift of land, it was shown by the evidence that the lands involved were particularly described in the instrument by their land office numbers; that execution was acknowledged before a justice of the peace by the person signing it, and after its execution the grantor referred to the instrument as a deed and never as a will; that at the time of making the instrument the grantor told the justice of the peace that he wanted his business fixed up so that his daughter and her husband (who were the grantees in said instrument) should get what property he had in case of his death, and that he had had the instrument prepared by his daughter's husband; that the consideration expressed in the instrument was that the grantee should care for the grantor during his life, pay the expenses of his last illness and his funeral expenses, and erect a monument over his grave; that the instrument contained a warranty, and after its execution the grantor gave it to the son of the grantees and told him to deliver it to his father.  The family physician of the grantor testified that the grantor told him he expected to give his property to his daughter, who was the grantee in said instrument, with the understanding that she was to care for him during his life, pay his funeral expenses and erect a monument over his grave.  It was shown that the grantees performed the consideration as expressed in the instrument.  *Held:*  That such evidence was sufficient to establish the contents of the said instrument, and that such instrument was a deed and not a will; and that, therefore, the grantees took under it, notwithstanding its subsequent destruction by the grantor.

2.  *Execution of a deed; undue influence; sufficiency of evidence.*  Where, on an issue as to whether or not the execution of a deed was induced by undue influence, it is shown that the grantor was seventy-eight years of age when he executed the

deed and was living with his daughter and her husband who were the grantees therein, and that although he had suffered from a paralytic stroke and had lost much of his mental and physical vigor and was not as capable as formerly of attending to his business, he knew what he was doing and executed the deed of his own volition upon the recited consideration that the grantees were to care for him during life and to pay his funeral expenses and erect a monument over his grave, all of which they did, the evidence was not sufficient to show that the execution of the deed was obtained by undue influence.

APPEAL from the Chancery Court of Lauderdale.

Heard before the Hon. WILLIAM H. SIMPSON.

On the 18th day of May, 1895, Z. M. Johnson died in Lauderdale county, Alabama, at about the age of 78 years. His children who are living or who left descendants are M. C. Johnson, T. W. Johnson, John C. Johnson and Nancy J. Whitten. M. C. Johnson is dead and his only descendants are the infant appellees, Beulah and Maud Johnson. T. M. Johnson is also dead and his only descendant is Selinah E. McFall. The wife of Z. M. Johnson died about two years prior to his decease, and soon after her death said Johnson went to live with his daughter, Nancy J. Whitten. Said Johnson died owing no debts, and the bill in this case was filed October 11th, 1895, by Selinah E. McFall and Beulah and Maud Johnson against the appellants, Nancy J. Whitten, John C. Johnson and H. W. Johnson. The bill averred that Z. M. Johnson died seized of certain lands specifically described in the bill; that by reason of advancements made to his other children, which were equal to their distributive share in said decedent's estate, the complainants were alone entitled to the lands described in the bill, and the bill prayed that said lands be partitioned between the complainants, and if partition be impracticable, that the lands be sold for division among the respective owners thereof. The defendant, Nancy J. Whitten, answered the bill, which answer was adopted by the defendant John C. Johnson, admitting all the allegations of the bill as to the relationship of the parties to each other and the decedent, but she denied

therein that Z. M. Johnson owned the lands described in the bill at the time of his death. She alleged in reference thereto that prior to his death, the said deceased conveyed the said described lands to her and her husband jointly in consideration of her giving him a home and caring for him and providing for his burial, &c.; and that, thereafter, the complainants had no interest in the said land.

It was shown by the evidence that Z. M. Johnson had executed some sort of an instrument to Mrs. Whitten and her husband, a short time before his death; that this instrument was not recorded, and that after its execution it was destroyed by said Z. M. Johnson. It was the claim of the complainants that this instrument was testamentary in its character, and was intended as a will and was, therefore, revocable, and by its destrutcion the beneficiaries therein acquired no interest in the lands. It was also contended by the complainant that at the time of the execution of said instrument, Z. M. Johnson was living in the home of Nancy J. Whitten and was, therefore, unduly influenced by her and her husband in the execution of said instrument.

It was the contention of Nancy J. Whitten, and her evidence tended to show, that said instrument conveying the lands described in the bill, was a deed and was so intended, and that there was no undue influence exercised by her or her husband to bring about the execution of said deed. The other facts of the case are sufficiently stated in the opinion.

On the final submission of the cause, on the pleadings and proof, the chancellor decreed that the conveyance executed by Z. M. Johnson to Nancy J. Whitten and her husband was not intended as an absolute conveyance, but was testamentary in its character and, therefore, revocable; and having been destroyed by the said Z. M. Johnson, it transferred to Nancy J. Whitten and her husband no property rights to the lands mentioned in said bill; and further, if it was a deed, it was obtained through undue influence on the part of the grantees. It was further decreed that the complainants were entitled to the relief prayed for, and it was so ordered. From

[Whitten v. McFall *et al.*]

this decree the defendants appeal, and assign the rendition thereof as error.

PAUL HODGES, for appellant.

JOHN T. A.SHCRAFT, *contra.*—Where the court, from all the evidence, can only surmise the probable effect of a written instrument which has been lost or destroyed, it will not undertake to declare and effectuate such probable effect. Before giving effect to such instrument the proof must be clear, full and satisfactory, strong, positive and convincing.—*Loftin v. Loftin,* 96 N. C. 94; *Jaques v. Horton,* 76 Ala. 238; *Shorter v. Sheppard,* 33 Ala. 648; *Newell v. Homer,* 120 Mass. 277; *Davis v. Sigourney,* 8 Met. (Mass.) 487, and note 490.

The burden of proving the contents of a lost or destroyed instrument is on the party seeking an interest under it.—*Newell v. Homer,* 120 Mass. 277; *Davis v. Sigourney,* 8 Met. (Mass.) 487.

Any instrument in writing, whatever may be its form, manifesting a posthumous disposition of property, can take effect only as a will and rights under it can not be asserted or recognized, until it has been admitted to probate in the proper form.—*Jordan v. Jordan,* 65 Ala. 305; *Gillham v. Mustin,* 42 Ala. 365; *Crocker v. Smith,* 94 Ala. 295.

Where the grantee is of superior mental capacity, or the grantor of weak or feeble intellect, the presumption of fraud will require strong evidence to remove it; and when any fiduciary relationship, such as parent and child, or intimate personal and business relations exists between the parties, a court of equity will grant relief against contracts entered into between them, unless the party claiming the benefit of the contract shows by clear and convincing proof that he acted with perfect good faith and did not abuse or betray the confidence reposed in him.—*Ryan v. Price,* 106 Ala. 584; *Waddell v. Lanier,* 62 Ala. 347; *Holt v. Agnew,* 67 Ala. 367.

HARALSON, J.—When a lost or destroyed deed or will is sought to be established, the proof of its contents

ought to be such as to leave no reasonable doubt as to its substantial parts. The evidence of what it contained should be clear, full and satisfactory.—*Elyton Land Co. v. Denny,* 108 Ala. 553. The burden of proving the contents of such a paper is on the party seeking an interest under it.—*Newell v. Homer,* 120 Mass. 277.

Another well recognized principle is, that when intimate personal and business relations exist between the parties, and one has advantage or superiority over the other, the validity of a deed made between them for the benefit of the one occupying such superior advantages, should be scrutinized with jealous care, and the *bona fides* of such transaction and its entire freedom from fraud and undue influence should be fully shown.—*Ryan v. Price,* 106 Ala. 584.

"In determining whether an instrument be a deed or will, the main question is, Did the maker intend any estate or interest whatever to vest before his death and upon the execution of the paper? Or, in other words, did he intend that all the interest and estate should take effect only after his death? If the former, it is a deed; if the latter, a will; and it is immaterial whether he calls it a will or deed, the instrument will have operation according to its legal effect."—*Gillham v. Mustin,* 42 Ala. 366; *Trawick v. Davis,* 85 Ala. 342; *Abney v. Moore,* 106 Ala. 131.

Another rule of construction is, that if the paper is on its face equivocal, the presumption is against its operating as a testamentary disposition, unless it is made clearly to appear that it was executed *animo testandi,* or being intended by the maker to operate as a posthumous disposition of his estate.—*Abney v. Moore, supra.*

The evidence in the case tends to show that the instrument by defendants' father, Z. M. Johnson, under which they claim, was a deed, and in some of its phases that it was testamentary in character. It is made certain that he executed a paper of some sort, either a deed or will, in which he granted defendants, Nancy Whitten and her husband, John Whitten, his property. It is also certain, that he afterwards destroyed the instrument.

The chancellor upon consideration of the evidence, ascertained that the paper was testamentary and revocable, and that the party executing it, having destroyed it, he thereby transferred to the grantees no property rights under it; but if it were construed as a deed, that it had been obtained through undue influence of the grantees.

We have carefully examined the evidence in the cause, and are unable to agree with the learned chancellor in his conclusions. Having reference to the competent evidence which was introduced, it appears that the instrument was a deed and not a will. It particularly described the land that was conveyed as it was described in the deed of the grantor's grantor, by its land office numbers, unusual in a will. That deed was used for the purpose of an accurate description of the property in the one that was made. It was acknowledged before a justice of the peace,—an unusual and unnecessary procedure in execution of a will,—in the manner to make it a deed, and in all his references to the paper, after its execution, the grantor referred to it as a deed and never as a will.

There were two witnesses examined for defendants, who are uncontradicted and who, if their testimony is to be believed, make it satisfactorily clear that it was a deed the grantor executed. So far as appears, they were disinterested, and without motive to misstate the facts they knew. One was I. M. Richardson, the justice who took the acknowledgment. He gives the date of the acknowledgment; states that he received a message from the grantor to come to the grantees' house where he lived to do some writing for him; that the grantor told him on his arrival, that he did not know how long he had to live, and how much trouble he was going to be, and desired to get his business fixed up so that if he should take another spell and die, his daughter, Nancy, (the defendant) with whom he had then for some time been living, would get what he had; that he had got John (Whitten)—the husband of Nancy, and both of whom were the grantees in the deed—to write the deed, and he guessed he wrote it all right, as he had

been getting him to do his writing for fifteen years, and he always did it as he told him; that the land embraced in the deed was the home place of the grantor on Cypress creek in said county and State; that the instrument recited the boundaries, and the consideration expressed was, that they, the grantees, should take care of him; "it warranted, guaranteed and defended the deed," as the witness expressed it,—something again foreign to a will,—and further recited that they were to clothe and feed him, give him a comfortable bed, put ordinary rock (as a monument) at his feet when he died, and after the doctor's bill and burial expenses were paid, then he desired Nancy (his daughter, the defendant) to have what he had left. He further testified that the grantor signed and acknowledged the deed in his presence, and then he, the witness, folded it up and started to hand it to the grantor, who told him to give it to George, who was his grandson, the son of the grantees, and said to George, who was present, "take that now and when your Pa comes home, give it to him," and the paper was given to George.

Dr. J. W. Lee, the attending physician of the grantor, testified, that the grantor told him in the presence of Mr. Whitten, that he was going to let him and Mrs. Whitten have his property with the understanding that they were to take care of him for his lifetime, pay his expenses, bear his burial expenses and the expense of putting a tomb-stone at his grave; that when he had a paralytic stroke before that time, he told witness to tell Esquire Richardson to come to Mr. Whitten's and take his acknowledgment of the deed to the property on Cypress creek; that his mental condition was good at that time for one of his age, but he was unbalanced before he died. He also testified that he had no other place that he knew of, except the one referred to as Cypress creek place.

The evidence also shows, that the grantor was seventy-eight years old; had before he made the instrument suffered a paralytic stroke which affected one whole side, from which he partially recovered; that he had a short while before, lost his wife and was in deep distress

and grief thereat, and had gone to the house of his daughter, Nancy, to live with her and her husband; that they cared for him while he lived and gave him burial at his death. If they failed to perform the conditions required of them as a consideration for the deed, it does not appear, but on the other hand, the evidence tends to show, they fully performed those conditions. Moreover, it does not appear that either of the grantees ever influenced him to make said deed, but it was the result of his own volition. The evidence also shows, that while the old man had lost much of his physical and mental vigor, and was not capable as formerly of attending to his business, he yet had mental capacity sufficient to know what he was doing when he made the deed, and the circumstances were such, at the time, as to impress one, that in making it, with the conditions and considerations imposed, he acted well and wisely. He seemed to realize that he would be an incumbrance and a care for the balance of life, and what he stipulated for as a consideration for the deed, would seem to be what one in his infirm, solitary and forlorn condition most needed,—a home with his daughter and her husband for the remainder of his days, not as a dependent object of charity, but making compensation, as far as he could, for the inconvenience, trouble and care they might experience by his presence in their home. It also appears that after he executed the deed his son-in-law, Mr. Whitten, died, and this added very greatly to his discomfiture and sorrows. The decrepitudes of old age, and the loneliness it brings, as common observation teaches, are generally a heavy burden to bear even in the home of those nearest to the aged. This old man must have experienced great alleviation of these burdens, and had his closing days solaced in no small degree in the possession of means which in his better days he had most anxiously laid away, to compensate a daughter, even, for the filial care and attention she might bestow upon him when the bereavements of life and the infirmities of age were bearing so heavily upon him. Nor was it an unnatural thing for the daughter to accept this proffered remuneration for the provisions

[Land & Rentz v. Boykin.]

she would make and bestow upon her aged and infirm parent.

It is always a matter of more or less difficulty to establish the contents of a lost deed or will. It would seem, the evidence in this case is about as full and clear as can ordinarily be had for such purpose. It is not denied, as we have stated, that the paper was executed. The expressions of the grantor in the instrument, that after his expenses were paid, including his doctor's and funeral bills and the cost of an inexpensive monument, he desired his daughter to have his property,—without which expressions the suggestion of a will could not have arisen,—did not change its character from that of a deed to that of a will, nor prevent the title to the property from vesting under it, in the grantees.

The decree of the chancery court is reversed and one will be here rendered dismissing the cause out of the court below.

Reversed and rendered.