# Gomez *et al.* Higgins *et al.*

|130|493|
|132|629|

*Bill in Equity for the Appointment of a Receiver.*

1.  *Receiver of partnership; when instrument a testamentary disposition of property and not a deed; case at bar.*—On a bill filed after the death of a surviving partner of a co-partnership, asking for the appointment of a receiver to take charge of the assets of the firm and have its affairs wound up, the following facts were shown: A co-partnership was formed between a father and son in a business already established by the father. It appeared by the terms of the instrument creating the partnership that the father contributed all of the capital put into the firm, and the son contributed nothing, and was expected to contribute nothing, but his time and services. Said instrument contained a provision by which the father bargained, sold and conveyed "an undivided one-half interest in and to said business, stock of goods, mortgages, profits, and incomes from the rents, to the said A. [son] during his life." Following this provision, it was further provided that in the event of the death of the father "the entire business with all assets, profits, book accounts, and money on hand shall become the property of A. [the son] during his life, and at his death the said business, together with all assets, profits, book ac-

counts, stock and money on hand shall be divided into three equal parts, as follows: One-third to my daughter F.; one-third to my daughter R, and one-third to the heirs of said A." After the establishment of such co-partnership and after the business had been conducted under the new arrangement, the father died leaving the son surviving him. Subsequent to the death of the father the son died. *Held*: (1.) That by said instrument there was a testamentary disposition of the property owned by the father to his son and the two daughters, and that said conveyance was not a deed but a will as to said property; and upon the death of the son after the father's decease, the two daughters mentioned in said instrument were entitled to a one-third interest therein. (2.) That such bill does not make out a case for the appointment of a receiver.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOMAS H. SMITH.

The bill in this case was filed by Alexander Gomez, Jr., and the other minor children of Alexander Gomez, deceased, by their mother as next friend, against Robert P. Higgins, individually and as administrator *de bonis non* of the estate of Francisco Gomez, deceased; Richard Pratt, individually and as administrator of the estate of Alexander Gomez, deceased; Romanda Higgins, who was the daughter of Francisco Gomez, deceased, and the wife of the said Robert P. Higgins, and Florida Gomez. The facts averred in the bill were as follows: For many years prior to August 25, 1898, F. Gomez, Sr., had been carrying on a tinware shop and mercantile business in Mobile, Ala., at stores on the east side of Water street, second, third, fourth and fifth doors south from St. Louis street; that on the 25th of August, 1898, he and his son Alexander Gomez entered into written articles of co-partnership signed by both and attested by two witnesses, in which are the following provisions:

1. "The firm name and style of said co-partnership shall be F. Gomez & Son, and shall continue under this name until the death of F. Gomez, except in case of the death of Alexander Gomez."

2. "The said Francisco Gomez contributes all his stock of tinware, machinery and all stock in trade,

manufactured and otherwise, tools and everything of whatever nature or description pertaining to said business, together with the business itself, the same now being carried on by Francisco Gomez on the east side of Water street, second, third fourth and fifth south from St. Louis street, in the city of Mobile, State of Alabama."

3. "The said Francisco Gomez also contributes to said business the following mortgages now on the records of Mobile county, which mortgages are all payable to the said Francisco Gomez, but hereafter to be a part of the assets of said business of F. Gomez & Son," (then follows a particular description of each mortgage, thirty-three in all.)

4. "The said F. Gomez also contributes the income and profits of all the real estate owned by him in the city and county of Mobile, State of Alabama, to the capital stock of said co-partnership."

5. "The said F. Gomez in consideration of the love and affection he has for his son Alexander, and rewarding him for his many years of invaluable assistance in helping him to maintain and increase the business, bringing it up to its present standard, and the further consideration of the sum of one dollar, does hereby bargain, sell and convey an undivided one-half interest in and to said business and stock of goods, mortgages and profits and income from rents, to the said Alexander Gomez, during his lifetime. The said Francisco Gomez and Alexander Gomez shall devote and give all their time and attention to the business of said firm. The said F. Gomez shall be general manager of the business and shall have full control of all credits, incomes and profits and the investment of the same during his lifetime. In the event of the death of F. Gomez, the entire business with all assets, profits, book accounts and money on hand shall become the property of Alexander Gomez during his lifetime, and at his death the said business, together with all assets, profits, book accounts, stock and money on hand shall be divided into three equal parts, as follows: One-third (1-3) to my daughter Florida Gomez, one-third (1-3) to my daugh-

ter Romanda Higgins, and one-third (1-3) to the heirs of said Alexander Gomez."

The foregoing comprises the material parts of the contract. This contract is Exhibit A to the bill. Alexander Gomez accepted the conveyance and he and his father executed the contract and carried on said business thereunder until March 22, 1899, when the said F. Gomez, Sr., died; and thereupon said Alexander Gomez at once possessed himself of all said property and assets of said co-partnership and continued to carry on said business under said firm name of F. Gomez & Son, until the 23d day of November, 1900, when he died. Alexander Gomez took out administration upon the estate of said F. Gomez, Sr. On January 6, 1900, Alexander Gomez, at the instance of Florida Gomez, executed a paper wherein he undertook to declare said co-partnership contract and conveyance "shall in all respects be treated as null, void and of no effect"; and that "I do hereby release, relinquish and forever quit-claim until the said heirs at law of Francisco Gomez, Sr., * * * all of the right, title and interest which I acquire or claim to have acquired by virtue of said instrument above described as articles of co-partnership, it being my intention that said property described in said articles of co-partnership, both personal and real, and which was the property of said Francisco Gomez, Sr., absolutely, prior to the alleged execution of said articles of co-partnership, shall descend and vest in the heirs at law of said Francisco Gomez, Sr., the same as if he had died intestate and without having executed said alleged instrument above described."

Notwithstanding the making of this paper said Alexander Gomez continued to carry on said business under said firm name of F. Gomez & Son until his death, November 23, 1900. Alexander Gomez had, on November 2, 1900, filed his accounts and vouchers in the probate court of Mobile county for a final settlement of his administration of the estate of F. Gomez, in which account he charged himself with this partnership property as assets of that estate, but no settlement thereof had been made at the time of his death. Florida Go-

mez and Romanda Higgins had not released their claim to said property, and had declined to agree that the said accounts of said Alexander Gomez were correct, etc.

After the death of Alexander Gomez, the appellee, Richard Pratt, was appointed administrator of his estate, and appellee, R. P. Higgins was appointed administrator of his estate, and appellee, R. P. Higgins was appointed administrator *de bonis non* of the estate of F. Gomez, Sr., and each had possession of same of said co-partnership property, pretending to claim that it belonged to the estates of their respective intestates; and that R. P. Higgins had applied to the probate court for an order to sell the same as property belonging to the estate of his intestate; that said Florida Gomez and Romanda Higgins had not taken possession of the property and complainants being minors were not able to do so.

The prayer of the bill was for the appointment of a receiver "to take full charge, control and possession of all the property, money, stocks, books, accounts and assets of said late co-partnership of F. Gomez & Son, and to collect in the debts due to said firm and pay the debts due by it, and to sell said property, stocks, etc., under the direction and order of this honorable court; and order and require the said Higgins and the said Pratt to account for and pay over to said receiver all moneys belonging to said late firm, and account for and turn over to said receiver all other property and assets, books, accounts, notes, mortgages, and papers belonging to said co-partnership of F. Gomez & Son which have come into their possession or control."

Upon the filing of the bill, the complainant made a motion that a receiver be appointed. Upon the submission of the cause on the motion of the complainant for the appointment of a receiver, the chancellor rendered a decree in which he overruled said motion and declined to appoint a receiver, and from this appeal the complainants appeal, and assign the rendition thereof as error.

L. H. & E. W. FAITH, for appellant.—It was competent for F. Gomez, Sr., the owner of the property, to

provide in and by said contract of co-partnership that Alexander Gomez, his son, should succeed to his interest in the property and assets thereof, and hold the same during his lifetime; and also to provide therein that, upon the falling in of this life estate by the death of Alexander Gomez, the said property should go, by way of remainder, over to the heirs of his son Alexander, and to his two daughters, Florida and Romanda.—*Vincent v. Martin,* 79 Ala. 545; *Burwell v. Cawood,* 2 How. (U. S.), 560; *Balmain v. Shore,* 9 Vesey, 500; 2 Lindley on Partnership, 853, *et seq.; In re Shaw,* 16 Atl. Rep. 662-667; *Gaut v. Reed,* 24 Texas, 46; *Nave v. Sturgess,* 5 Mo. App. 557; *Robertson v. Miller,* 1 Brock. 466; *Essex v. Essex,* 20 Beav. 442.

We respectfully submit that under the law of this State, this is a deed and not a will, and the learned chancellor erred in holding otherwise.—*Kinnebrew v. Kinnebrew,* 35 Ala. 640; *Golding v. Golding,* 24 Ala. 122; *Wilks v. Greer,* 14 Ala. 437; *Gillham v. Mustin,* 42 Ala. 366; *Griffith v. Marsh,* 86 Ala. 302; *Kyle v. Perdue,* 87 Ala. 428; *Abney v. Moore,* 106 Ala. 134.

R. H. & N. R. CLARKE and GREGORY L. & H. T. SMITH, *contra.*—It was once held in the case of *Thompson v. Johnson,* 19 Ala. 59, that an instrument could not operate both as a deed and as a will, but this case was overruled, and the contrary doctrine established in the cases of *Taylor v. Kelly,* 31 Ala. 74; *Kinnebrew v. Kinnebrew,* 35 Ala. 639; *Bohlman v. Overall,* 80 Ala. 454. It seems now to be thoroughly settled that one part of an instrument may operate *in praesenti* as a deed, and another *in futuro* as a will.—29 Amer. & Eng. Encyc. of Law, (1st ed.), 150, § 4.

It would be difficult, indeed, to treat an instrument as a deed passing a present estate, when, upon its face, it declares that it is to operate at and only in the event of the death of the grantor, and when it disposes of profits not yet earned, book accounts and money not such as are on hand, but such as may be acquired, and shall remain on hand at that time.—*Abney v. Moore,* 106 Ala. 134; *Jordan v. Jordan,* 65 Ala. 306; *Moor v.*

*Campbell*, 102 Ala. 452; *Crocker v. Smith*, 94 Ala. 297; *Trawick v. Davis*, 85 Ala. 35; *Whitten v. McFall*, 122 Ala. 623.

HARALSON, J.—We can understand very well, if the only surviving partner in a copartnership dies, it is competent and may be necessary for a court of equity to take charge of the assets of the firm and have its affairs wound up by the appointment of a receiver. High on Receivers, § 530; 20 Am. & Eng. Ency. Law, 292. Whether that course should have been pursued in this case, must depend upon the proper construction of the instrument termed the agreement of partnership between F. Gomez and his son, Alexander Gomez, of date 25th August, 1898,—exhibit A to the bill.

There can be no question but that exhibit A was a partnership agreement between said parties, but this did not prevent it being testamentary in character also, in some of its provisions, and that it is testamentary, on the part of F. Gomez, in one of its provisions, is the contention of the defendants.

It appears by the terms of said instrument, that F. Gomez contributed all the capital put into the firm, and that Alexander contributed nothing, and was to contribute nothing but his time and services, and F. Gomez, in addition to the capital he contributed, was also to contribute his time and services. It was stipulated, that the senior was to be the general manager of the business and should have full control of all credits, income and profits, and the investment of the same during his lifetime. Under this latter provision, and under his general authority as a partner, it appears he retained and could exercise very large, discretionary powers in the management and disposition of the firm's affairs and assets.

It was provided that the partnership thus formed, should continue "until the death of F. Gomez, except in case of the death of Alexander Gomez." If Alexander had died first, his entire interest in the business would have ceased, and nothing would have been left to him but his share in the profits, if any, up to that time. His interest in and to one-half of the business

profits, if any, as well as to his joint ownership in the capital put in by his father, both as to its amount and duration, is made certain by the terms of the agreement itself, as well as is the consideration on which his ownership therein, as limited, was given him.    The language of the agreement as to this matter is: "The said F. Gomez in consideration of the love and affection he has for his son, Alexander, and rewarding him for his many years of invaluable assistance in helping to maintain and increase the business, of bringing it up to its present standard, and the further consideration of the sum of one dollar, does hereby bargain, sell and convey an undivided half interest in and to said business and stock of goods, mortgages and profits and income from rents, to the said Alexander *during his life.*" (Italics ours:)    So, if he had died first, it is too plain to admit of dispute, all the property of the firm became, at once, the property of the father, leaving said Alexander's estate interested only in the profits earned to that time, if any.

Following this last mentioned provision, is another providing for the contingency of the death of F. Gomez, leaving his said son surviving him.    The provision is: "In the event of the death of F. Gomez, the entire business with all assets, profits, book accounts and money on hand shall become the property of Alexander Gomez during his life, and at his death, the said business, together with all assets, profits, book accounts, stock and money on hand shall be divided into three equal parts, as follows:—one-third (1-3) to my daughter Florida Gomez, one-third (1-3) to my daughter Romanda Higgins, and one-third (1-3) to the heirs of said Alexander Gomez."    This provision is plain and unambiguous, as to the direction the property mentioned should take, on the death of said F. Gomez, his son surviving him,— an event which occurred.    The said Alexander, in that event, was entitled to have, keep and use, during his life, the entire property put into the firm by his father, as well as the profits, if any, at that time on hand, and when Alexander died whatever remained, in its then present state, should go to, and be divided between, his

two daughters, and the children of said Alexander,—the children of Alexander taking a third, and each of the others named, a third. F. Gomez never gave to his son more than an undivided half interest in the capital of the partnership, retaining to himself the ownership of the other half interest, affected as it might be, by the partnership into which it was placed, and the conduct of its business; and what he thus gave his son, was given to him, as already stated, for life only. When he came to provide in the articles of partnership, for the contingency of his own death, in the clause last quoted, his son surviving him, his intention appears to have been, to direct to whom his own undivided half interest should belong, as well as to direct how the remainder he had in what he had given for life to his son should go, and to whom the whole estate should belong. So, he directed that the whole property,—his own undivided half interest therein, and his remainder in the undivided half interest he committeed to his son,—"shall become the property of Alexander Gomez, during his lifetime"; and afterwards, to be divided between the parties named. These residuaries had no right or title to or enjoyment of the property, or any of it, until Alexander died. Until then, it belonged to him; and if Alexander had died first, it was within the power of said F. Gomez to have given a different disposition of the property, from that made in the clause last referred to. In it he evidently intended that the interest and estates to his said children, should take effect only after his death. He was under no contract obligation with Alexander, nor with any of his own children not to alter the terms of that gift, in the event Alexander died before he did. All that he ever contracted for, with said Alexander, was that he should have the half interest in the property mentioned during his, Alexander's, life, and this he fully secured to him, giving him in addition, as a gratuity, in case said Alexander survived him, his own undivided half interest for life. If Alexander had died prior to his father, the children of F. Gomez, had, as already stated, no title to any of the copartnership property, except in the profits earned, if any, for which they

could have made the latter account to them. If the instrument be construed as a deed, then it fixed their interests and was not revocable, or subject to change by the said F. Gomez. It has the ear marks of a testamentary disposition of the property, such as constrain us to hold, that it did not pass a present estate, but was a testamentary disposition as to the property in question.—*Jordan v. Jordan*, 65 Ala. 306; *Trawick v. Davis*, 85 Ala. 342; *Moore v. Campbell*, 102 Ala. 452; *Abney v. Moore*, 106 Ala. 134; *Whitten v. McFall*, 122 Ala. 623.

So far as it affects the merits of the question we consider, it is of no consequence whether these bequests were vested at the death of F. Gomez or only after the death of Alexander. The administrator of the elder Gomez, on his appointment, had the right to the possession and administration of the property.

The contract, exhibit B, entered into by Alexander with his sisters for their own and the benefit of the children and grandchildren of F. Gomez, had no effect to change in any wise the disposition the said testator had made of his property. Its only effect was the renunciation by Alexander of his life estate in the property, thereby accelerating the remainders to the children and grandchildren of the testator.

The administrator of Alexander, would be entitled to receive, the share of his intestate, in the profits of the copartnership, if any appear, but it is not averred that there were any.

The motion for a receiver was properly denied.

Affirmed.

