(77 South. 716)

HASSELL et al. v. HASSELL. (6 Div. 218.)

(Supreme Court of Alabama. Nov. 15, 1917. Rehearing Denied Jan. 24, 1918.)

1. CONTRACTS ⬳99(1)—FRAUD—UNDUE INFLUENCE—PRESUMPTIONS.

The relation of parent and child is confidential, but it is always presumed, prima facie, that in all transactions between them the parent is the dominant party, and that they are free from undue influence.

2. DEEDS ⬳196(3) — UNDUE INFLUENCE — BURDEN OF PROOF.

In a parent's action to set aside deed to her child for undue influence, the parent has the burden of proving such influence.

3. DEEDS ⬳72(7) — UNDUE INFLUENCE — CONFIDENTIAL RELATION.

The law distinguishes the relation of parent and child, in so far as gifts or grants from the parent to the child are concerned, from other classes of confidential relations, and it revokes such benefits only where the exercise of actual undue influence is shown, and not merely because of a confidential relation and the absence of competent independent advice to the grantor.

4. DEEDS ⬳72(7)—UNDUE INFLUENCE.

Even where the dominance of the parent has presumptively ceased, the inquiry, in suit to set aside parent's deed to child, is whether, on all the evidence, it reasonably appears that the beneficial act proceeded from the free volition of the parent, without imposition or coercion on the part of the beneficiary.

5. DEEDS ⬳72(7)—UNDUE INFLUENCE—INADEQUATE CONSIDERATION.

In the parent's suit to set aside deed to child for undue influence, inadequacy of pecuniary consideration is not evidence of undue influence.

6. DEEDS ⬳211(4) — UNDUE INFLUENCE — EVIDENCE.

Evidence *held* insufficient to show that the parent's deed to the child was secured by undue influence.

Appeal from Chancery Court, Tuscaloosa County; A. H. Benners, Chancellor.

Bill by Mrs. M. R. Hassell against John D. Hassell and others, to set aside and annul a conveyance. From a decree for complainant, respondents appeal. Reversed and rendered.

The bill is filed by Mrs. Hassell setting aside a conveyance of land and release of debt made and given by complainant to her son John D. Hassell. The bill alleges that the execution of both of said instruments was procured for a grossly inadequate consideration, by the exercise upon complainant by said John D. Hassell of undue influence, and the abuse of confidence reposed in him by her, and that neither transaction was the result of complainant's own free will. The answer denied the allegation of undue influence, and inadequacy of consideration. The conveyance in question was the homestead and farm of complainant, containing about 160 acres, with a reservation to her for life of the house and several acres contiguous. The recited consideration was the payment by the grantee secured by mortgage on the land of $2,500 to the other five children of the grantor, brothers and sisters of the grantee. The release which was executed concurrently with the conveyance is for a debt of $1,700 due from said respondent to the complainant, the recited consideration being "the many beneficent acts of kindness that he has done for me, and in consideration of his supporting and maintaining me for the balance of my natural life." At the date of these transactions complainant was a widow 67 years of age, and residing on her farm. The respondent, age 34, had lived with her there from infancy, and for some years past had managed the farm, and transacted all business for his

said mother. The other four sons, the oldest being 50, and the youngest 31, had all gone out from the home many years before, and never afterwards lived with complainant, and the only daughter, Mrs. L. P. Anders, had married • and left home the year previous. Complainant's account of the transaction is as follows:

"I first made the suggestion to John D. myself, about making a deed to the property. He declined to accept the deed at that time, as he wanted to move over to what he called his place, and up to that time he had never asked me to make him a deed to the property. I offered to give him this deed if he would stay on the place with me. I cannot say just how long before the making of the deed this offer was made. In fact, I have no idea how long it was. It may have been two months, or it may have been longer or shorter. At the time the deed was made I was satisfied to make John D. a deed, and everything was agreeable up to that time. It was John D.'s suggestion that the house be left out to me. * * * He suggested the $2,500 which was to be paid the other heirs after my death. When I first offered to make him a deed, and he declined, nothing was said about this $2,500. * * * At the time the deed was made it was my wish and desire that John D. have the property, and it was perfectly satisfactory to me when I first made it. I lived with John D. a year, or about that time, after the deed was made. I always stated that I expected John D. to have the place, but I expected him to stay single. With respect to her leaving the home place after John D.'s marriage, complainant says John's wife and myself always got along very well together. There was never a cross word exchanged between us. I think I am welcome when I go to John's house, but I do not feel welcome. John has never refused me any food or clothing since I left him. I have never asked him for any, and he has not offered to take me back since I left there, but I know he would be glad to have me back. * * * Since this deed was made, John D. has told me that I could have anything he had."

The testimony of numerous witnesses was without dispute to the effect that Mrs. Hassell always expressed the desire and the intention that John should have the home place. The property was variously estimated in value from $3,200 to $8,000.

Wright & Fite, of Tuscaloosa, for appellants. H. A. & D. K. Jones, of Tuscaloosa, for appellee.

SOMERVILLE, J. The principles of law which govern cases of this character have been frequently discussed and carefully stated by this court.

[1-4] (1) The relation of parent and child is per se a confidential relation, but it is always presumed, prima facie, that in all transactions between them the parent is the dominant party, and that they are free from undue influence. (2) In such cases the burden is upon the complainant to overcome this presumption, and to reasonably satisfy the court that time and circumstances have reversed the order of nature, so that the dominion of the parent has not only ceased, but has been displaced by subservience to the child. (3) The law distinguishes the relation of parent and child, in so far as gifts or grants from the parent to the child are concerned, from other classes of confidential relations, and it revokes such benefits only where the exercise of actual undue influence is shown, and not merely because of a confidential relation and the absence of competent independent advice to the grantor. (4) Even where the dominance of the parent has presumptively ceased, the inquiry is whether, on all the evidence, it reasonably appears that the beneficial act proceeded from the free volition of the parent, without imposition or coercion on the part of the beneficiary. Hawthorne v. Jenkins, 182 Ala. 255, 62 South. 505, Ann. Cas. 1915D, 707, and the numerous cases cited therein.

[5] It is to be noted also that in such cases the fact that the pecuniary consideration is inadequate, or even entirely absent, is not evidence of undue influence exerted upon the grantor; for "gifts and benefits flow naturally from parent to child," and "every person who is sui juris, and under no legal disability, has an unquestionable right of disposition of his property, whether by gift or otherwise." Hawthorne v. Jenkins, supra; McLeod v. McLeod, 145 Ala. 269, 40 South. 414, 117 Am. St. Rep. 41. And, as said by Mr. Pomeroy:

"Transactions between parent and child may proceed upon arrangements between them for the settlement of property or of their rights in property in which they are interested. In such cases courts of equity regard the transaction with favor. They do not minutely weigh the consideration on one side or the other." 2 Pom. Eq. Jur. (2d Ed.) § 962.

So, we have pointedly declared that when a grant or gift is in fact free from fraud or undue influence, "it becomes immaterial what the consideration was." Stroup v. Austin, 180 Ala. 240, 60 South. 880. We, of course, do not mean to say that, when associated with evidence of actual undue influence, inadequacy of consideration may not be an important factor against the grantee upon that issue. But it merely aggravates and does not create that conclusion.

The decisive question in this case is whether complainant executed to respondent, John D. Hassell, the conveyance of her farm and the release of the debt, pursuant to her own free volition, or whether her acts were the result of artful persuasion or moral pressure applied to her will by John D. Hassell, so that his will superseded and directed hers, in abuse of a confidence reposed and an influence exerted to her disadvantage. We have sifted the immense volume of evidence with patient care, and considered it in the light of the arguments presented by counsel. It is impossible, if it were expedient, to analyze and discuss it in detail. In the reporter's statement will be found references to portions which we regard as most vital.

We can only summarize our conclusions as follows: (1) Complainant, though advanced in years, and subject to the ordinary infirmities of body and mind, is above the average in intelligence and will power, considering

her age. (2) The evidence falls far short of reasonably satisfying us that she was under the moral dominion of her son John, prior to or at the time of the conveyance in any sense other than the natural complaisance that springs from maternal affection and affiliation. (3) There is nothing in the evidence that indicates in any way that John conceived or inspired the idea of a conveyance to him by complainant. (4) The evidence is clear and convincing—indeed, without dispute—that complainant herself had always looked forward to giving the farm to him, and so expressed herself to many persons. (5) Her own testimony shows that she herself first proposed to make him the deed, without reservation to herself or benefit to her other children. (6) Her affection for John; his long residence with her after all her other children had left her and become established in homes and pursuits of their own; his lack of the higher education she had provided for some of the others; the fact that he was a farmer, and dependent upon that pursuit for his living—all furnish a solid basis in fact for her predilection in his favor, and her undoubted wish and purpose to give the farm to him.

[6] On the whole, we find it impossible to rationally conclude that the transactions here attacked were other than the unaided results of her free volition and choice—this wholly apart from any question of the adequacy of the consideration in a strict legal sense.· Stroup·v. Austin, 180 Ala. 240, 60 South. 879. Such acts must be upheld by the courts, though they may have the appearance of unwisdom and inequality, and though a change of feeling or other event may afterwards prompt the grantor to seek their repudiation.

It results from the foregoing that the decree of the chancery court must be reversed, and a decree will be here rendered denying relief, and dismissing the bill of complaint. Reversed and rendered.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.