126 So.2d 116

**Joel D. FORTUNE et al.**

**v.**

**J. C. BOUTWELL et al.**

**4 Div. 8.**

Supreme Court of Alabama.

Nov. 17, 1960.

Rehearing Denied Jan. 26, 1961.

Robt. B. Albritton, Andalusia, and B. B. Rowe, Enterprise, for appellees.

Alice L. Anderson, Enterprise, for appellants.

SIMPSON, Justice.

Appellants filed their bill of complaint in the Circuit Court of Coffee County, Alabama, in Equity, which sought to set aside a deed made by Mrs. Lonnie Fortune to J. C. Boutwell and Shelby Boutwell on July 24, 1956, on an allegation which claimed undue influence and lack of mental capacity of the grantor to convey land. Respondents, appellees, filed a cross bill asking for an affirmative decision that the deed was and is a proper deed of conveyance; that the legal title to the land in question is in J. C. Boutwell and Shelby Boutwell and for an injunction enjoining complainants from interfering with the use and possession of

Mrs. Lonnie Fortune to the other lands owned by the grantor. Mrs. Lonnie Fortune, after being allowed by the court to intervene, joined in this cross bill. Subsequently, and before final decree, she died and the cause, as to her, was revived in the name of her personal representative.

Factually, the case presents the following: Mrs. Lonnie Fortune, the grantor, had been twice married and had two sets of children. Her first marriage when she was very young was to Calvin Boutwell. To this marriage there were born three children, one of whom is dead, leaving J. C. Boutwell and Shelby Boutwell, the appellees. Prior to his death, Calvin Boutwell deeded to Mrs. Lonnie Fortune, his then wife, 280 acres of land, which is the subject of this suit. After Boutwell's death, Mrs. Lonnie Fortune, grantor in the deed in question, married Andrew Fortune. To this last marriage there were several children born, all of whom are complainants, appellants here. After the marriage to Fortune, Mrs. Lonnie Fortune retained ownership of and lived on the land deeded her by her first husband. During her second marriage Mrs. Fortune's second husband, Andrew Fortune, acquired ownership of 40 acres of land, which was owned by him at his death. Upon the division of the estate of Stephen Smith, Mrs. Lonnie Fortune's father, Mrs. Fortune received as her part of the estate, 55 acres of land which was known as the "Smith land" and which was owned by Mrs. Fortune at the time of her death on November 6, 1957. Mrs. Fortune continued to live with Andrew Fortune from the time of their marriage until his death on May 30, 1956.

On July 24, 1956, Mrs. Lonnie Fortune executed a deed to J. C. Boutwell and Shelby Boutwell, who were the living children of her first husband, Calvin Boutwell, to the 280 acres deeded her by her said husband prior to his death. These grantees were Boutwell's children. It is this deed which complainants, appellants, are seeking to have set aside and declared void.

The testimony was heard by the court ore tenus and upon final submission a decree was entered, from which we quote:

"On due consideration of all the testimony, it is the opinion of the Court that the relief prayed by the complainants should be denied. It is true that at the time the deed in question was made, Mrs. Fortune was, to-wit, 83 years of age, had no education, was almost totally blind, hard of hearing, and was feeble in body, but this Court is convinced that she was far from being mentally incapable; she knew what she was doing in making the deed to the Boutwells and did exactly, in this Court's opinion, what she wanted to do, which was to deed the Boutwell children the land left by their father. Prior to making the deed, and up to the day before, she discussed with disinterested people the matter, and related her intention to deed to the Boutwell children the Boutwell land. On the day before the transaction she discussed the matter with her family physician and told him what she wanted to do and what she was going to do. In the opinion of the Court, the evidence is not sufficient to establish undue influence under the facts in question that would set the deed aside. It is further the opinion of the Court that the land involved in the deed and described in the bill of complaint is the property of J. C. Boutwell and Shelby Boutwell, and that no other person has any right therein, including these complainants, and that the complainants should be permanently enjoined from interfering with or molesting the title, possession or ownership of J. C. Boutwell and Shelby Boutwell in the land."

It is from this decree that the complainants appeal, on the ground that the same is contrary to the evidence, and the law in the case.

The law with regard to mental incapacity to avoid a conveyance of land

is well settled. We have stated the governing principle in varying language: Incapacity to understand the business transacted, as distinguished from mere sickness, must be proved in order to avoid a conveyance. Stanfill v. Johnson, 159 Ala. 546, 49 So. 223. A person with sufficient mental ability to comprehend what he is doing and understand the nature of the act and its consequences has capacity to make a deed. Frederic v. Wilkins, 182 Ala. 343, 62 So. 518; Harris v. Bowles, 208 Ala. 545, 94 So. 757; Hall v. Britton, 216 Ala. 265, 113 So. 238. Mere weakness of intellect is not sufficient to incapacitate a grantor and to warrant cancellation of a deed on ground of mental incapacity. McKinney v. Weatherford, 242 Ala. 493, 7 So.2d 259. The law presumes everyone to be sane until the contrary is proved, and it is unsoundness of mind and incapacity to understand the business transacted, in contradistinction to mere weakness, which must be proved in order to avoid a conveyance. Halman v. Bullard, 261 Ala. 115, 73 So.2d 351. Likewise, advanced age or mental enfeeblement is not sufficient to invalidate a conveyance unless the grantor's mind was so impaired as to render her incapable of acting intelligently and voluntarily in the conveyancing. Lee v. Menefield, 249 Ala. 407, 31 So.2d 581.

■ Guided by these authorities we must and do hold that the trial court ruled correctly on the issue of mental capacity.

■ Also, on the issue of undue influence, we are unable to find any substantial evidence to support the claim. The mere fact that Mrs. Fortune was living with her son, J. C. Boutwell, does not of itself show undue influence because she conveyed the 280 acres to J. C. and Shelby, his brother. Hawthorne v. Jenkins, 182 Ala. 255, 62 So. 505. The natural affection which inspired such a conveyance will not invalidate the deed on the ground of undue influence. Harris v. Bowles, supra. Undue influence which is required to avoid a conveyance must proceed from some act of dominance or coercion over the will of the grantor.

That which results from sympathy or affection is not sufficient. Adair v. Craig, 135 Ala. 332, 33 So. 902.

The following are some of our cases enunciating the apposite rule: Smith v. Smith, 221 Ala. 56, 127 So. 815; Stroup v. Austin, 180 Ala. 240, 60 So. 879; Frederick v. Hartley, 202 Ala. 43, 79 So. 381; Noel v. Noel, 229 Ala. 20, 155 So. 362; Crump v. Crump, 252 Ala. 164, 40 So.2d 94; Whitten v. McFall, 122 Ala. 619, 26 So. 131. As stated, we are unable to find any evidence supporting the claim of undue influence within the rule of our cases. See also Hassell v. Hassell, 201 Ala. 190, 77 So. 716; Brake v. Graham, 214 Ala. 10, 106 So. 188.

The court heard the testimony of numerous witnesses including the parties to the cause and neighbors of the grantor, Mrs. Fortune, many of whom testified that they had known her for many years prior to her death and had seen her frequently in the years prior to her death. There was abundant evidence upon which the decree finding that she was mentally competent to convey lands could be rested, although the burden of proof in this case rested on appellants to prove undue influence and mental incapacity. The court itself questioned Mrs. Fortune and her testimony appears in the record in support of the trial court's finding. On the other hand the strongest evidence to support the contention made by appellants that the grantor was mentally incompetent, or subject to undue influence, may be summed up in the statements by various witnesses that the grantor was "old and feeble and couldn't hear good" and "was forgetful".

■ As stated, there was no sufficient showing of either the exercise of undue influence, or mental incapacity. The cases are legion to the effect that when the evidence is taken ore tenus before the trial court, his findings will not be reversed unless palpably erroneous. See Ala. Digest, Appeal and Error, ☞1008. We are guided

by this principle in concluding that no grounds for reversal are shown.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.