170 So. 202

## WILLIAMS et al. v. DENT.

### 4 Div. 863.

Supreme Court of Alabama.

Oct. 15, 1936.

Chauncey Sparks, of Eufaula, and Coleman, Spain, Stewart & Davies, of Birmingham, for appellants.

Crews Johnston, of Clayton, for appellee.

GARDNER, Justice.

Complainant, Helen Dent Williams, cross-complainant, Louie Dent, and defendant, George H. Dent, Jr., are the surviving children of Helen A. Dent, who died, at the age of 85 years, on December 26, 1932, leaving a will, under the terms of which, if so owned by her, it is conceded these three would share equally as tenants in common in testatrix' undivided one-half interest in a certain storehouse and lot in the city of Eufaula, known as the Weedon & Dent Drug Store.

Complainant to the original bill, and her brother, cross-complainant, Louie Dent, seek identical relief—sale of the said property for division and for an accounting against their brother George H. Dent, the defendant; and as to the matter of pleading, the designation "complainant" will suffice for them both.

The pivotal question in the case is one of fact, squarely presented by the bill as last amended, and as the result of this appeal turns upon a determination of this issue of fact, all other phases of the bill may be left to one side without discussion.

This question of fact relates to the matter of delivery of a deed admittedly signed and acknowledged by defendant George H. Dent, Jr., on August 30, 1929, and purporting to convey to his mother, Helen A. Dent, an one-half undivided interest in the above-mentioned storehouse known as the Weedon & Dent Drug Store in Eufaula.

Defendant insists there was no delivery of this deed, and the learned chancellor accepted his theory of the proof, submitted only on depositions, and dismissed the bill. Since the passage of the act of 1915 (Gen. Acts 1915, p. 594; Sec. 10336 Michie's Code), it has not been the policy of this court to enter into a detailed discussion of the evidence (Caples v. Young, 206 Ala. 282, 89 So. 460), nor would it here serve any useful purpose. We are content, therefore, with a brief outline of the proof in connection with a preliminary reference to some of the legal principles applicable thereto.

First as to the proof. The one half interest in the store building involved was given Helen A. Dent by her father. The other half interest was owned by the Weedon heirs, who desired a sale for division, and to avoid a court proceeding it was agreed by all parties the property be offered for sale at public outcry. Of course Helen A. Dent was interested in seeing that the property brought a fair price. Her son George, who had lived alone with her at the home place in Eufaula the last five years of her life, became a bidder at the sale for the protection of his mother's interest, pursuant to an understanding between them, as testified to by defendant himself, and as expressed by him in a letter to his brother Louie bearing date July 24, 1929, wherein, among other expressions, are the following: "The drug store * * * will be sold on August 5th, and very little cost. * * * I have the money and will protect mama's interest up to a certain amount. * * * and if I buy it in for mama the same will have to be done as mama has no deed to it, while we all know the store is hers, one-half." Had the price gone as high as $7,000, defendant says he would have let it be sold to others, but his bid of $6,500 was the last and highest, and he became the purchaser for that sum. All owners, including his mother, joined on August 14, 1929, in a deed to defendant, which deed was duly recorded August 21, thereafter. The Weedon heirs were duly and promptly paid their one-half of the purchase price of $3,250. Defendant's mother, Helen A. Dent, was paid nothing. He insists he handed her a check for her share of the purchase price, but that she refused to accept it, giving as the reason defendant had not received from his father's estate as much as the other children—that all she wanted was the rents from the property.

Admittedly, defendant did receive his proportionate share of the proceeds of the sale of his father's estate, and said estate was under no obligation to him whatever. The reference, therefore, was clearly to the matter of advancements which were the subject of litigation reaching this court (Dent v. Foy, 210 Ala. 475, 98 So. 390), and not, of course, a matter to be here reopened.

While the deed by all the joint owners to defendant bears date August 14, 1929, its delivery was evidently on August 21st, which is the date of the last acknowledgment and of its recordation. Within a few days thereafter, and on August 30, 1929, defendant signed and acknowledged before a notary, who was also his attorney, a deed conveying to his mother an one-half undivided interest in this property. Defendant in this connection testifies: "I went to see * * * my lawyer, and I told him she refused to take it and I wanted to have something to show for it, and he drew that up, and she said, 'I' don't want it. You got nothing out of your father's estate, and I want you to have this drug store.'"

While defendant states his mother, the grantee therein named, never had possession of the deed, yet we gather from his further testimony the witness intended to say his mother never had continuous possession. As later, in answer to the question, "You handed it to her, didn't you?" he answered, "Yes sir." "She had her hands on it, didn't she?" Answer: "I reckon she looked at it, just like you looked at this check and handed it back." And at another place, speaking of the deed, defendant said: "She wanted to give this back to me, she wouldn't take it, and I asked her, I said, I better go and have this recorded for you, and she said 'no, I give it back to you, just give me the rents from

it during my life time, that's all I want: you got less out of your father's estate than any of the children, and I want you to have this; just give me the rents.'" Defendant insists that she got the rents and more which he gave her out of his own funds.

██ It is of course quite clear that all of this evidence of defendant as to statements by and transactions with his mother come within the inhibitions of section 7721, Code 1923, and were therefore inadmissible. McDonald v. Harris, 131 Ala. 359, 31 So. 548. But as we read the record, the answers of defendant to interrogatories propounded by complainant relating to these very matters were responsive thereto and offered in evidence by complainant, and were in fact proof called for by the opposite party within the exception of the statute. It is therefore properly here for consideration.

This deed by defendant to his mother was never recorded, but was kept by him in his safety deposit box in the bank at Montgomery with the other deed, and in the same box defendant kept his mother's will as she had requested. He also had in his keeping her bank book together with those belonging to himself, but these were not in the deposit box.

Shortly after the purchase, a joint rent account was opened at the bank in Eufaula in the name of H. A. and George H. Dent, Jr., the first entry being on October 15, 1929. Admittedly this was the joint account of defendant and his mother, and this rent account was the only joint account they had. Checks drawn by defendant alone were honored, and the proof is defendant transacted all the business of the account. The mother neither made deposits nor did she draw any checks on the account. The last entry was on August 14, 1934, and the last deposit December 6, 1933. Defendant states that the money on this account went for taxes and repairs and cash to his mother, and she received the benefit of the entire account and more besides, which he gave her. Defendant's mother had other property and she acquired some cash from some capital sales.

While her health was fair for one of her age, yet a lameness prevented her from going about to any great extent, and unquestionably defendant, a man of mature years and the only one of her children living with her, attended to some of her business transactions. And the proof is persuasive that Helen A. Dent consulted defendant as to a change in her will when the codicil thereto was written, after the death of her son Warren—all of which more clearly appears from a letter written by defendant to his brother Louie, bearing date February 12, 1929. All of which is here of little importance, further than to show the relation existing and confidence bestowed.

On February 19, 1930, in a letter to his brother Louie, defendant, speaking of his mother, said: "She has gone through with what she had. I had to pay the taxes or part of them for her. She owes me for fixing the roof and repairs on Dg. too. Glad to do this for her." The abbreviation "Dg." in the letter was interpreted by the brother to refer to the drug store; and this interpretation remained unchallenged.

██ Complainant and her bother Louie each testify to declarations of their mother indicating her continued ownership of an one-half interest in this property, and that defendant had her deed in his box with her will. But we consider this testimony as inadmissible under our statute (section 7721, Code 1923; McDonald v. Harris, supra), and the case will be determined without regard thereto. But in Warten v. Black, 195 Ala. 93, 70 So. 758, we approved those authorities holding that a witness may testify to any fact coming to his knowledge in any other way than directly through personal dealings with the deceased. Duly authenticated letters, therefore, written by their mother, if otherwise admissible, are due to be considered under this rule. Proof as to the joint rent account in connection with all the circumstances relating thereto suffice to show a constructive possession of the property by Helen A. Dent, and the letters are therefore otherwise admissible as containing declarations explanatory of such possession, and the issue being one of disputed ownership. Owen v. Moxon, 167 Ala. 615, 52 So. 527; 22 Corpus Juris 273.

██ Letters of Helen A. Dent, offered in evidence, furnish strong proof as to her claim of ownership. In one mailed August 7, 1929, addressed to her son Louie and his wife, Helen A. Dent used the following expression: "Well the drug store was sold for $6500.00. Geeggie bought the Weedon half; and delighted could get it so cheap." And in another addressed to the same parties, and bearing date July 29,

1931, she said, among other things: "I am ready to sell out my interest in the drug store, kept it for sentiment, but can't live on sentiment. We went to a good deal of expense to fix the store." As to defendant, complainant and her brother Louie each testify to statements made by defendant acknowledging his mother's interest in the property.

Complainant's first conversation with defendant relative to the drug store, and before their mother's death, was at the home in Eufaula in September 1930, when she testifies defendant told her, in substance, he had the drug store fixed in his name, that those "down-stairs" would not come in for their part of the drug store, but that he would take care of her and she need not worry. The conversation with the mother, which followed, is to be excluded. But in January, 1933, closely following the death of Helen A. Dent, the three children met in the hotel in Montgomery, read the will and discussed the matter of their mother's estate. At that time complainant testifies her brother Louie reminded defendant as to the drug store being in his name and asked, "Will you give Helen and myself a deed for our interest in the drug store?" And he said, "Yes, I'll give you the same paper I gave mama." And that in the same conversation, defendant, in answer to the question as to what their mother owned at her death, named among her properties the one-half interest in the drug store; that Louie Dent made a memorandum contemporaneously on the hotel stationery, so disclosing; and this is offered in evidence. Complainant says defendant at that time promised to send them a deed for their interest in the drug store the next day, which he did not do, and in February thereafter, when complainant and her brother Louie came to Eufaula to have the will probated, Louie asked about the deed, and defendant replied that after thinking it over he had decided to keep that as advancements, as he did not get anything out of his father's estate. And it was then for the first time she saw this deed. And a reference to a relative attorney in a letter written by defendant January 10, 1933, addressed to complainant, adds some confirmation to complainant's testimony about a promise of a deed to their interest in the drug store.

The evidence of Louie Dent is equally positive and to like effect as that of his sister. When asked concerning these conversations, defendant denied them, but in some instances would add that he did not remember making such statements.

But the strongest confirmation of complainant's theory of the case is found in a letter admittedly written by defendant to his brother Louie a few days before the meeting in Montgomery, bearing date January 3, 1933, in which he suggests the meeting in Montgomery, refers to his mother's will, which should be read in the presence of all, names the cash on hand belonging to his mother and a few small bills he had paid, and contains the following significant statement: "Mama's estate can easily be settled. All she has is the 1160 acres Bullock, Caesar lot and house, half of drug store." On cross-examination, when asked what he meant when he wrote that, his answer was: "Why, I don't know." His counsel attempts an explanation and makes reference to her reception of rents during her life. But the argument overlooks the fact that defendant was then making reference to the settlement of an estate and of what the estate consisted, and, of consequence, the explanation does not explain. We take it that it is inexplicable, except upon the theory advanced by complainant.

Other details of facts are here omitted, all tending to a common result, but the recital of some of the salient features of the proof suffice as a basis for the conclusion reached.

The deed by defendant to his mother, Helen A. Dent, was for her benefit and imposed no burden or duties. Its acceptance is presumed (Arrington v. Arrington, 122 Ala. 510, 26 So. 152), but delivery, of course, was essential to its validity. Jemison v. Howell, 230 Ala. 423, 161 So. 806, 99 A.L.R. 1511. The passing of the deed from the hand of the grantor to that of the grantee is not essential (Perkins v. Perkins, 206 Ala. 571, 91 So. 256), for delivery is a fact resting in intention and is to be collected from all the acts and declarations of the parties having relation thereto, no formality, no particular words, no certain acts being essential. As expressed in Elsberry v. Boykin, 65 Ala. 336: "It may be actual, by a transfer of the conveyance, signed and attested, or acknowledged, from the manual possession of the mortgagor, to the manual possession of the mortgagee, though not a word is spoken; or, it may be by saying something, and doing nothing; as, when the mortgage, signed,

114

attested, or acknowledged, is lying on a table, and the mortgagor should say, 'There is your mortgage,' or 'There is your deed,' or, 'That paper is sufficient for you;' or any other words, clearly signifying the mortgagor's intention to part with dominion over it, and to pass it to the mortgagee." And declarations of the grantor, made after the alleged delivery, tending to show a delivery of the deed, are admissible as admissions against interest. Gulf Red Cedar Co. v. Crenshaw, 169 Ala. 606, 53 So. 812.

 Guided by these recognized rules, we think a delivery has been sufficiently established. The deed was duly signed and acknowledged, and as we interpret defendant's testimony, it in fact passed from his hands to the grantee. Clear enough, from his own evidence, all essential elements of a delivery were present on his part—an intention to part with dominion over the deed and to pass it to the grantee. Nor can we say the presumption of its acceptance has been sufficiently overcome by the proof.

The deed was not discarded, but preserved by the grantor in the same deposit box in the bank in which he kept his mother's will. The quotations from the mother's letters, written subsequent to the event, hereinabove set out, demonstrate that she understood her one-half interest in the drug store was still intact, and that defendant had only purchased the interest of the Weedon heirs. Defendant's declarations to his sister and brother after his mother's death and speaking of what the estate consisted, demonstrate also that defendant viewed the ownership of the property in the same light, that is, as belonging to his mother. And this testimony as to these declarations are worthy of acceptance, not so much that it is the testimony of two against one, nor that this denial by defendant was not so positive and unequivocal as might have been anticipated, but from the more cogent reason that the defendant, in the letter of January 3, 1933, only a few days after his mother's death, stated that the estate could "easily be settled," and listed, among her possessions, "one-half of drug store." Defendant, when asked for an explanation, had none to offer. True, as his counsel suggests, this is not a declaration of a delivery of the deed in so many words. Nevertheless it is a solemn statement over his own signature, undenied and unexplained, which

is only consistent with the theory that defendant and his mother considered the deed to her duly delivered, and that he held the deed safely for her in his box just as he preserved for her the will which she requested him to keep, and her bank book as well, which he seems to have kept among his own. But further elaboration of the facts is unnecessary.

Upon a careful study of the evidence, we find ourselves unable to agree with the learned chancellor's conclusion. The decree denying relief and dismissing the bill will be reversed, and one here rendered granting the relief prayed for in the bill— a sale of the property for division among complainant, cross-complainant, and defendant, with the interest of each established by agreement, as found on page 127 of the transcript, as follows: Complainant one-sixth, cross-complainant one-sixth, and defendant four-sixths, and a reference will be ordered to ascertain reasonable compensation for solicitors for complainant to the original bill, and an accounting of rents by defendant, with credits for taxes, insurance, and repairs by him expended. And the cause will be remanded to be proceeded with in accordance with these instructions.

Reversed, rendered and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.