49 So.2d 166

**MARKS v. MARKS.**

6 Div. 962.

Supreme Court of Alabama.

Oct. 26, 1950.

Rehearing Denied Dec. 14, 1950.

Wm. S. Pritchard, Victor H. Smith and Pritchard & McCall, all of Birmingham, for appellant.

Jas. A. Simpson, Ormond Somerville and Lange, Simpson, Robinson & Somerville, all of Birmingham, for appellee.

LIVINGSTON, Justice.

In brief, appellee states "We believe that the statement of the case and the pleadings, as set forth in appellant's brief, are correct and we do not take exceptions thereto." For the Court we adopt it here. It is as follows:

"The original bill of complaint was filed March 17, 1948, and for convenience we will refer to the appellant as complainant and appellee as respondent in this statement of facts. After the allegations as to the ages, residences of the parties, the bill averred in substance that:

"The complainant was the owner of and in peaceful possession of an undivided three-fourths interest in the east half of lot 7, block 98, according to the present plan of the City of Birmingham; that the respondent claimed or was reputed to claim some right, title or interest in or an encumbrance upon the lands; that no suit was pending to enforce or test the validity of complainant's right, title, etc. and called upon the respondent to set forth and specify his title, etc. and by what instrument the same was derived or created.

"The bill charges that the respondent claimed a right, title or interest in the land by virtue of a purported deed signed by complainant which purports to be dated the 7th day of April, 1938 and which was filed for record in the probate office of Jefferson County, Alabama on December 12, 1938 and is recorded in Volume 2942, page 549. A copy of said instrument being attached as Exhibit 'A' and made a part thereof by reference.

"The deed so referred to is, in form, a warranty deed and recites that the grantor is an unmarried man and that 'in consideration of the sum of five dollars ($5.00) and the natural love and affection I bear my nephew and other valuable considerations to me in hand paid by John Scott Marks' there was granted, bargained, sold and conveyed to the respondent the real estate above described, 'retaining however, to myself, an estate for life.'

614

"In the 4th paragraph of the bill, it is recited that although the deed purports to be dated April 7, 1938 and recites the complainant was an unmarried man, in fact the said deed was actually signed by complainant about September 15, 1938 and not prior thereto, that when such deed was actually signed by complainant he was a married man and had been a married man since August 1, 1938. That while the deed recited that the consideration therefor was the sum of $5.00 and the natural love and affection complainant bore to his nephew, and other valuable considerations, that the truth and fact was that no money or other valuable consideration whatever was paid or agreed to be paid to complainant by anyone as a consideration of said deed and that complainant had never received or contracted for any valuable consideration for said deed.

"Paragraph 5 alleges that when complainant signed said purported deed and for many years prior thereto he was and had been the absolute owner of said real estate, that the same was of great value, to-wit, sixty thousand and no/100 dollars ($60,000.00). That his signature to said deed was obtained by fraud and as a part of a fraudulent scheme on the part of the respondent and his two brothers, Sam B. Marks and Charles L. Marks, Jr., to obtain the described real estate and other valuable real estate of complainant for themselves and to deprive complainant of the right to enjoy the absolute title thereto and to make such disposition as he might see fit thereof.

"That at the time he signed said deed and for a considerable period of time prior thereto the respondent was an attorney at law engaged in the practice of his profession in the City of Montgomery, Alabama, where complainant resided and that respondent as such attorney at law had on many occasions prior thereto advised complainant with respect to legal matters affecting his business and affairs; that the relation of attorney and client existed between respondent and complainant and a relation of trust and confidence on the part of complainant in respondent existed, and that complainant had full confidence in the integrity of said respondent and had the right to rely upon him not to betray the trust. That upon the advice of and at the request of the respondent, complainant executed the deed falsely showing the date of its execution to be April 7, 1938 and that at the same time and under the same circumstances he executed two other separate, similar instruments, purporting to convey an interest in two other separate parcels of valuable real estate in the City of Birmingham to the respondent's brothers Sam B. Marks and Charles L. Marks, Jr., and that complainant was induced to sign said purported deeds through the undue influence which respondent exerted over complainant at the time and that he was entitled to have said deeds cancelled and annulled as a cloud upon his title.

"The 6th paragraph alleges that said deed was never delivered by complainant to respondent, the grantee therein named; that it was distinctly understood and agreed by and between complainant and respondent when said deed was so signed and left with the respondent that the deed would be left with said respondent to be held by him as the agent and attorney for complainant and that it would not be filed for record; that it would be kept by the said respondent as such agent and attorney for complainant subject to complainant's control and that said deed would be returned to complainant on his demand therefor and the complainant was free at any time to destroy the deed and to make any other disposition of the land that he saw fit; that complainant had never authorized or consented to the delivery of the deed to the respondent or any person for him, neither had he authorized or consented to the filing of said instrument for record; that in violation of said agreement under which the deed was so left with the respondent to be held by him, merely as agent of complainant, it was averred upon advice, information, and belief that on or about December 12, 1938 the respondent breached the trust so reposed in him by causing and allowing the said deed to be filed for record in the probate office of Jefferson County, Alabama. That he had no knowledge that said deed would be so filed for record

and did not learn of the filing thereof in the probate office until a date within three years prior to the filing of the bill and he expressly repudiated and disaffirmed the filing of said deed for record in said probate office; that complainant was over eighty years of age and was over seventy years of age on September 15, 1938; the bill offers to do equity.

"The prayer of the bill was to quiet the title to the lands described and declaring that the respondent had no right, title, interest, claim or encumbrance thereon and that the court would set aside and cancel the purported deed as a cloud upon the title of complainant and for alternative relief."

█ With the exception of the testimony of complainant, taken *de bene esse* and the answers of the parties to interrogatories, the evidence in this cause was given *ore tenus* before the trial court. Where the evidence is taken thus, the trial judge has the witnesses before him, hears their testimony and observes their demeanor on the witness stand, and unless his judgment or decree is palpably wrong it will not be here disturbed. Bonds v. Bonds, 234 Ala. 522, 175 So. 561; McClurkin v. McClurkin, 206 Ala. 513, 90 So. 917; Hodge v. Joy, 207 Ala. 198, 92 So. 171; Wade v. Miller, 208 Ala. 264, 93 So. 905; McWilliams v. Phillips, 71 Ala. 80; Puckett v. Puckett, 240 Ala. 607, 200 So. 420; Porter v. Porter, 244 Ala. 132, 12 So.2d 186; Lewis v. Ebersole, 244 Ala. 200, 12 So.2d 543.

The lower court generally and without a written opinion denied the relief prayer for in the bill of complaint and taxed complainant with the costs of court. This appeal followed.

When the instant suit was instituted against John Scott Marks suits were also filed against his brothers Sam B. Marks and Charles L. Marks involving the identical transactions except that each of the three Marks brothers were given separate deeds conveying separate properties. By agreement, the three cases were consolidated for convenience and submitted for decree on the record in the instant case and separate decrees entered by the trial court. The same procedure was followed on submission in this Court.

As to some matters the evidence is in direct conflict, and as to others conflicting inferences may be drawn. But after a careful consideration of the evidence we find ourselves in accord with the judgment of the lower court.

The following facts are well supported by the evidence: Hugh Marks, the complainant, a resident of Montgomery, Alabama, did on April 7, 1938 execute and deliver to his three nephews, John Scott Marks, Sam B. Marks and Charles L. Marks, deeds conveying to each separately, separately described parcels of real estate located in the City of Birmingham, Alabama. In each conveyance the grantor reserved to himself a life estate in the lands conveyed. The deeds were recorded in the office of the judge of probate of Jefferson County, Alabama, on December 12, 1938. At the time the deeds were executed and delivered Hugh Marks was unmarried and about seventy years of age, a prior marriage, of short duration, having been legally dissolved and from which marriage no children were born. On August 1, 1938, Hugh Marks married again, but not the same person and was living with his second wife when the suits were instituted and when they were tried. No issue resulted from the second marriage. The suits were instituted on March 17, 1948, approximately ten years after the execution and delivery of the deeds. Hugh Marks, joined by Sam B. Marks and wife, executed and delivered four separate mortgages to the First Federal Savings and Loan Association of Montgomery, Alabama, conveying the property conveyed to Sam B. Marks by Hugh Marks. These mortgages bear the respective dates of April 15, 1944, January 27, 1945, March 26, 1945 and April 20, 1946, and secure considerable sums. The wife of Hugh Marks did not join in these mortgages, and in each Hugh Marks was designated as a life tenant. The father of Hugh Marks had four children, viz., Hugh, Charles L., H. Churchhill and Mrs. Betty. Hugh and H. Churchhill had no children. Charles L. had six and Mrs. Betty had one child.

All of the property involved in this litigation came to Hugh M. Marks from his father's estate. John Scott Marks is, and has been since 1930, an attorney at law. He engaged in the practice of law for some time, but most of his time was consumed in looking after his father's (Charles L. Marks) property. His father is now dead. He gave much of his time and attention to the business of his uncle Hugh Marks. The members of the Marks family seem to have been and to have remained close to each other, frequently meeting together at one place or another. About the year 1936 or 1937, the estate of Charles L. Marks and Hugh Marks being considerable, there was much discussion among the family group relative to increases in the federal estate or inheritance taxes, and ways and means were discussed as to how best, not to evade, but to keep them within legal bounds on the eventual death of Charles L. and Hugh Marks. John Scott Marks spent much time and effort to that end, but he testified that, as to these efforts, he neither charged nor received any pay whatever; and there is little or no evidence from which a contrary inference can be drawn. Hugh Marks testified that the deeds to his three nephews were not executed until after he married in August 1938, and that they were never delivered and that there was never any intent to deliver them. The three nephews and other witnesses testified that the deeds were delivered on the day the same bear date and as to the conditions and circumstances surrounding the delivery.

The principles of law here involved are plain, often repeated in our decisions, and are well understood. We think it unnecessary to do more than cite the applicable authorities. Waddell v. Lanier, 62 Ala. 347; Marsh v. Elba Bank & Trust Co., 205 Ala. 425, 88 So. 423; Verner v. Mosely, 221 Ala. 36, 127 So. 527; Worsham v. Johnson, 231 Ala. 265, 164 So. 381; Brasher v. First National Bank, 232 Ala. 340, 168 So. 42; Floyd v. Green, 238 Ala. 42, 188 So. 867; Best v. Best, 247 Ala. 627, 26 So.2d 723; Tipton v. Tipton, 249 Ala. 537, 32 So.2d 32; Webb v. Webb, 250 Ala. 194, 33 So.2d 909.

We have made no attempt to repeat or analyze the entire evidence.

In our opinion the deeds here involved were executed and delivered on the day the same bear date with the intent and purpose that they take effect immediately; and that no improper or undue influence was used in the procurement of their execution and delivery; that Hugh Marks was fully capable of knowing, and did know, exactly what he was doing when he executed and delivered the deeds, and that his actions in that regard were free from the influence of anyone.

Moreover, we think the doctrine of laches may well be applied here. True perhaps, the grantees have not changed their positions, unless Sam B. Marks has made himself personally liable on some unpaid notes over and beyond the value of the property deeded to him, but ten years with full knowledge and the ability to act is a very long time to wait.

We find no error to reverse and the cause is due to be affirmed. It is so ordered.

Affirmed.

All the Justices concur, except GARDNER, C. J., and LAWSON, J., not sitting.