66 So.2d 736

**HINSON et al. v. BYRD et al.**

**3 Div. 623.**

Supreme Court of Alabama.

June 30, 1953.

Rehearing Denied Aug. 11, 1953.

Hill, Hill, Stovall & Carter, Montgomery, for appellees.

Walter J. Knabe, Montgomery, for appellants.

LAWSON, Justice.

This is an appeal from a final decree of the circuit court of Montgomery County, in equity.

Complainants below, suing by their father and next friend, filed their bill to cancel a deed or, in the alternative, to have the deed declared to be a deed of trust. The relief prayed for having been denied, the complainants have appealed to this court.

The bill sets out as grounds for relief that the deed was procured by the exercise of undue influence by one of the grantees therein, Jerry Byrd, over the grantor; that the grantor was incompetent to understand what she was doing; that the conveyance was without consideration; that there was a mutual mistake as to the meaning of the deed; that in several respects the grantor was mistaken as to the meaning of her acts; and that the deed was not delivered.

Our consideration here will be confined to the issues of undue influence, mistake and delivery, as these are the only matters sufficiently urged in briefs filed on behalf of appellants, complainants below.

Complainants are the five minor children of the grantor, Ella Lee Hinson, deceased. The complainant Jerry Byrd is a brother of the grantor and the respondents Ida and Love Byrd are her parents. All three respondents are grantees in the deed in question.

Arthur Hinson and Ella Lee Hinson were divorced on June 9, 1948. The custody of their five minor children was awarded to Ella Lee. At the time of the divorce Arthur conveyed to Ella Lee two pieces of real property situate in the city of Montgomery. One of the pieces of property is known as 40 Mill Street and the other, a combination residence and store, is referred to as 911 Cleveland Avenue.

For a while Ella Lee occupied the residence on Mill Street and rented out the property on Cleveland Avenue. It appears that later she removed to a residence on Jackson Street, where she lived with two of her daughters. The evidence tends to show that after moving to the house on Jackson Street the residence on Mill Street was also rented out.

In December, 1948, Ella Lee mortgaged the property on Mill Street to secure a loan of $2,400 which she had obtained from Mrs. Regina Loeb, a client of Mr. Eugene Heilpern. In April, 1949, Ella Lee borrowed the sum of $1,500 from Mr. Heilpern and executed a mortgage in that amount to him on the Cleveland Avenue property to secure that loan.

The payments due on the two loans were supposed to be made out of the rentals received from the two pieces of property, but Ella Lee persisted in intercepting the rents and did not apply the money so received on the payment of the loans. By September, 1950, she was badly behind in the payments due on the Heilpern loan and on the 25th

day of that month Mr. Heilpern notified her in writing that he expected full payment of his loan by October 16, 1950. She was also informed at that time by Mr. Heilpern that on December 22, 1950, she was expected to pay the sum of $192 on the Loeb loan. Ella Lee was evidently in serious financial difficulty. She had become ill in August, 1950. Her brother, Jerry Byrd, sought financial assistance from several persons. He was unsuccessful and returned to Mr. Heilpern, who made it known that he was not interested in refinancing the two loans as long as Ella Lee was in a position to intercept the rents, but indicated that he would refinance them if it was assured that the rents being paid on the two pieces of property would be devoted to the payment of the loan.

After negotiations between Jerry Byrd, representing Ella Lee, and Mr. Heilpern the latter agreed to lend Ella Lee the sum of $4,800 with which to pay the outstanding mortgages, as well as certain bills incurred in improving the store property as required by the health regulations of the city of Montgomery. As security for the $4,800 loan, Ella Lee was to execute a mortgage on the two pieces of property in favor of Mr. Heilpern and was to execute a deed conveying a life estate in the two pieces of property to her mother and father, Ida and Love Byrd, with remainder to herself and her brother, Jerry Byrd, equally.

On the morning of November 9, 1950, Jerry Byrd, Mr. Heilpern and an employee of his who was a notary public went to the home of Ella Lee Hinson. At that time and as a part of the same transaction, she executed a mortgage in the sum of $4,800 on the two pieces of property in favor of Mr. Heilpern and a deed wherein she conveyed a life estate in the two pieces of property to her mother and father, with remainder to herself and her brother, Jerry.

Upon these instruments being executed, they were both turned over to Mr. Heilpern and the deed was recorded by him in the probate court of Montgomery County at about 11:00 A.M. on the morning of November 10, 1950.

At about 8:00 on the morning of November 10, 1950, Ella Lee Hinson was found dead in her bed by two of her daughters who lived with her.

█ The entire testimony was taken orally before the trial court, who saw and heard the witnesses. We have often stated that under such circumstances the findings of fact of the trial court have the weight of a jury verdict and will not be disturbed unless palpably wrong. Jackson v. Morrison, 257 Ala. 481, 59 So.2d 681; Marks v. Marks, 254 Ala. 612, 49 So.2d 166.

██ The law presumes the exercise of undue influence in transactions *inter vivos* where confidential relations exist between the parties, and puts upon the donee or grantee, when shown to be the dominant party in the relationship, the burden of repelling the presumption by competent and satisfactory evidence. Webb v. Webb, 250 Ala. 194, 33 So.2d 909. But it is not always necessary to show independent advice when confidential relations exist and the grantee or donee is the dominant spirit, though the burden is on the grantee or donee to do so or to show by other evidence which satisfies the judicial conscience that the matter was the voluntary and well-understood act of the grantor's mind, and was fair and just.

Scott v. Hardyman, 218 Ala. 515, 119 So. 224; Webb v. Webb, supra.

██ The mere relationship of brother and sister does not in itself create a confidential relationship. Noel v. Noel, 225 Ala. 302, 143 So. 469. However, the evidence in this case, in our opinion, discloses that a confidential relationship existed between Ella Lee Hinson and her brother, Jerry Byrd, in the nature of principal and agent. As to who was the dominant party in the transaction, the evidence does clearly disclose. As before indicated, Ella Lee had been ill for several months prior to the time the deed was executed. However, her illness was not considered serious and she had not been confined to bed at all times. She had not been treated by a doctor for eight days prior to her death and we think it clear from the testimony that her illness was not considered by her doctor or the

immediate members of her family as serious enough to produce her death. The evidence is without conflict to the effect that on the day the deed and mortgage were signed Ella Lee Hinson appeared to be in all respects mentally alert and in fairly good physical condition. She possessed a good education, having completed two years of college work, and had had some business experience. On the other hand, her brother, Jerry Byrd, while a successful farmer and apparently a rather prosperous Negro, was not nearly so well educated. But assuming that Jerry Byrd was the dominant personality in this relationship, we cannot say that the evidence presented to the trial judge was not sufficient to support a finding that Jerry Byrd met the burden upon him to show that the deed was the voluntary and well-understood act of the grantor's mind and was fair and just. There is ample testimony in the evidence tending to explain the grantor's act in conveying a one-half undivided interest in the remainder to her brother, Jerry Byrd. The evidence tends to show that for several years past Jerry Byrd had been advancing his sister, the grantor, considerable sums of money to assist her in her financial difficulties. The same is true of the grantor's mother and father.

After a careful review of the evidence when considered in connection with the rule of review which obtains, we cannot say that the trial court erred in not finding that the deed was executed as a result of undue influence exerted over the grantor by Jerry Byrd.

In regard to the appellants' claim that the trial court should have set aside the deed on the ground that its execution resulted from mistake, the theory of appellants seems to be that the purpose of the deed and the mortgage to Mr. Heilpern was to save Ella Lee's property from foreclosure and to provide a method whereby the new mortgage might be paid; that the deed could not accomplish that purpose for the reason that a life tenant is obligated to pay only interest on a mortgage and is entitled to contributions from the remaindermen for any sum paid on the principal.

Hence, the appellants assert that all parties were mistaken as to the meaning of the deed and as to the legal significance of what was being done.

But this situation, in our opinion, makes out a case of mistake of law, inasmuch as the three people participating in the transaction had full knowledge of the facts and of their existing legal rights, but were operating under a misconception of the legal meaning and effect of the instrument executed. 3 Pomeroy's Equity Jurisprudence (5th Ed.), § 841.

In such a case we must adhere to the rule of long standing that a pure mistake of law is not an adequate ground for relief in equity. Here the mistake, if any, was not intermixed with any mistake of fact, nor was there any element of fraud, imposition, undue influence, or weakness of mind proven. Thus the mistake, if any, was one of law purely and equity will not intervene to disturb an otherwise valid deed executed under such circumstances. See Norwood v. Louisville & N. R. Co., 149 Ala. 151, 42 So. 683; Kelly v. Turner, 74 Ala. 513; Hemphill v. Moody, 64 Ala. 468; Hardigree v. Mitchum, 51 Ala. 151; Gwynn v. Hamilton's Adm'r, 29 Ala. 233; Dill v. Shahan, 25 Ala. 694; Haden v. Ware, 15 Ala. 149; 3 Pomeroy's Equity Jurisprudence (5th Ed.), §§ 842, 843, and 846.

We might add that the evidence amply supports a finding by the trial court that at the time Ella Lee Hinson executed the deed she was fully cognizant of what she was doing. The evidence tends to show that she read both the deed and the mortgage and repeated to the persons present the provisions of the deed and the interests it created and then stated that it was as she wanted it. Moreover, the appellants, complainants below, conceded in open court that the mortgage which, as before shown, was executed at the same time as the deed, was valid.

The final question relates to the delivery of the deed. As heretofore shown, it is undisputed that after signing the deed in

464

the presence of Jerry Byrd, Mr. Heilpern and the notary public, Ella Lee Hinson handed it to Mr. Heilpern, who recorded it the following morning. This court has held that delivery is a question of fact resting in the intention of the grantor—the intention that the deed become presently effective and that title pass. It is an intention that must be drawn from the attendant circumstances and no particular formalities, words or acts are required. Neither is it essential that the deed be passed to the grantee in person. Alford v. Henderson, 237 Ala. 27, 185 So. 368; William v. Dent, 233 Ala. 109, 170 So. 202; Crosby v. Baldwin County, 227 Ala. 122, 148 So. 814; Perkins v. Perkins, 206 Ala. 571, 91 So. 256; Culver v. Carroll, 175 Ala. 469, 57 So. 767; Gulf Red Cedar Co. v. Crenshaw, 169 Ala. 606, 53 So. 812.

While delivery is not presumed from the handling of a deed from the grantor to a third person, such an act may be sufficient if the facts manifest the grantor's intention to divest himself of title. Gulf Red Cedar Co. v. Crenshaw, supra; Culver v. Carroll, supra.

We find in the circumstances of the transaction sufficient basis to support a finding by the trial court that delivery was effected when Ella Lee Hinson handed the executed deed to Mr. Heilpern. Such a procedure appears reasonable in view of the fact that Mr. Heilpern also was taking the mortgage and would have both instruments recorded at the same time. A finding that the grantor intended the deed to become operative from the moment she released dominion over it is not palpably wrong under the evidence and accordingly we will not disturb such a finding.

Having considered the entire record as it bears on the questions argued here, we conclude that the decree of the circuit court denying relief to complainants should be affirmed.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.