166 So.2d 409

Alvin **BLANTON**

v.

**Tom BLANTON et al.**

1 Div. 200.

Supreme Court of Alabama.

July 9, 1964.

John M. Coxwell, Monroeville, for appellant.

W. C. Owens, and B. E. Jones & R. L. Jones, Monroeville, for appellees.

LIVINGSTON, Chief Justice.

This appeal is from a decree of the Circuit Court of Monroe County, Alabama, in Equity, setting aside a lease extension agreement, dated March 7, 1959, extending an original lease dated January 30, 1956 to December 31, 1975. The original lease was for a term of five years, and contained the lessee's option to renew for a term of five additional years.

The complainants in the court below, appellees here, are children and grandchildren, and heirs at law of O. L. Blanton, deceased. Alvin Blanton, the respondent in the court below, appellant here, is a son and heir at law of O. L. Blanton, deceased.

The allegations of the bill of complaint are to the effect that O. L. Blanton executed the extension agreement as a result of undue influence exercised by appellant over his father. The lease covered some 400 acres of valuable farm lands in Monroe County at a rental of $750 per year.

The testimony of all the witnesses, both for appellant and for appellees, were heard in open court by the trial judge.

The trial court found that there was a confidential relation existing between the appellant and his father, that the appellant was the dominant party in that relationship, and that the lease agreement was the product of undue influence on the part of the appellant. The trial court decreed that the extension of the lease be set aside, canceled, and held void.

The rule has long been established that even where errors are assigned they will not be dealt with by this Court unless they are argued in brief. Louisville & N. R. R. Co. v. Holland, 173 Ala. 675, 55 So. 1001; Keeton v. Northern Alabama Ry. Co., 222 Ala. 224, 132 So. 35. The assignments of error upon which appellant relies in brief are as follows:

1. The court erred in allowing an amendment to the original bill by interlineation.

2. The court erred in rendering a decree which is not supported by the evidence.

The appellant contends that the bill of complaint was amended by interlineation. It is his contention that it originally read "the complainants and the respondent constitute all the heirs at law and next of kin of O. L. Blanton, deceased." Appellant says this aspect was amended by adding the phrase "and are owners of all the property and interest therein, hereinafter described."

This Court, in Persons v. Summers, 274 Ala. 673, 151 So.2d 210, said:

"The court erred in permitting amendments to the bill by interlineations on the original bill. The first sentence of Equity Rule 28, subd. 1(a)

reads: 'Amendments of bills and answers shall be made on a separate piece of paper.' The reasons for this rule are obvious. When a pleading is filed in court, it should not be changed or altered. Any change or alteration should be shown by a separate piece of paper. Interlineations could possibly require the overruling of a demurrer, when without them it should be sustained. And on review, this court does not see the original pleadings, but as they are copied in the transcript. It is imperative that each amendment be on a separate piece of paper so that it clearly shows at what stage of the proceeding the amendment was made."

■■■ On review, this Court does not see the original pleadings, but as they are copied in the record. The record does not show that there was any amendment to the original bill whatever. Appellant should have protected the record by proper objections and timely motions in the trial court. The longstanding rule of this Court has been that the Supreme Court is remitted to the consideration of the record alone and absolute truth must be imputed to it, and if it is incomplete or incorrect, amendment or correction must be sought by appropriate proceedings rather than by impeachment on hearing in the appellate court, by statements in brief, by affidavits, or by other evidence not appearing in the record. Evans v. Avery, 272 Ala. 230, 130 So.2d 373; Cooper Transfer Co. v. Alabama Pub. Serv. Comm., 271 Ala. 673, 127 So.2d 632; Logan v. O'Barr, 271 Ala. 94, 122 So.2d 376. For aught that appears from the record, the bill contains no interlineation.

As to appellant's second contention, that the decree was not supported by the evidence, this Court, in Hinson v. Byrd, 259 Ala. 459, 66 So.2d 736, said:

"The entire testimony was taken orally before the trial court, who saw and heard the witnesses. We have often stated that under such circumstances the findings of fact of the trial court have the weight of a jury verdict and will not be disturbed unless palpably wrong. Jackson v. Morrison, 257 Ala. 481, 59 So.2d 681; Marks v. Marks, 254 Ala. 612, 49 So.2d 166."

As to the court's findings that there was a confidential relationship, and that the appellant was the dominant spirit in that relationship, this Court, in the similar case of Tipton v. Tipton, 249 Ala. 537, 32 So.2d 32, said:

"The relationship of parent and child is confidential. Worsham v. Johnson, supra [231 Ala. 265, 164 So. 381]; Gibbons et al. v. Gibbons, supra [205 Ala. 636, 88 So. 833]. But our cases recognize that gifts and bequests flow naturally from parent to child in accordance with the instincts and common practice of mankind. Therefore, while the relation of parent and child is per se confidential, yet the presumption prevails in this state that the parent is the dominant spirit, and in the absence of evidence other than the mere voluntary gift and confidential relationship, the presumption is that the transaction was free from undue influence. Worsham v. Johnson, supra; Dolberry v. Dolberry, 153 Ala. 434, 44 So. 1018; McLeod v. McLeod, 145 Ala. 269, 40 So. 414, 117 Am.St.Rep. 41.

"However, such presumption is not conclusive. The rule in this regard is stated in Dowe v. Farley et al., supra [206 Ala. 421, 90 So. (291) 292], as follows: 'Where it is made to appear by the proof that the child, and not the parent, is the dominant spirit, then the burden of proof is shifted to the former to establish the fairness of the transaction, and that it was not the result of undue influence.' See Keeble v. Underwood, 193 Ala. 582, 69 So. 473, 475; Couch et al. v. Couch et al., 148 Ala. 332, 42 So. 624."

■■■ We are clear to the conclusion from the evidence presented in the record before us that the son was the dominant spirit. The father was 80 years' old, feeble in body

and mind, and the consideration expressed in the lease is wholly inadequate. The son was young and apparently in good health. He lived on the father's farm and operated it. The weight of the evidence is unquestionably to the effect that time and circumstances reversed the order of nature and that dominion of the parent finally became subservience to the child.

The law is clear that where there is a confidential relationship and the beneficiary of a transaction is the dominant party to that relationship, the burden of proof is on such beneficiary to establish that the transaction was fair, free from undue influence, fraud or deceit or misrepresentations, or that the grantor had disinterested, independent, and competent advice. Milliner v. Grant, 253 Ala. 475, 45 So.2d 314.

This court has further held that the dominant party in a confidential relationship has a duty to protect the interest of the other party and the burden of proving that he had in good faith exercised that duty is on the dominant party. This view was initially expressed in Bancroft v. Otis, 91 Ala. 279, 8 So. 286, and followed in Hutcheson v. Bibb, 142 Ala. 586, 38 So. 754. The rule there stated was to the effect that undue influence with respect to transactions inter vivos may exist without either coercion or fraud. It may result entirely from the confidential relationship, without activity in the direction of either coercion or fraud on the part of the beneficiary occupying the position of dominant influence. It is upon him not only to abstain from deceit and duress, but to affirmatively guard the interests of the weaker party, so that their dealings may be at arm's length. To presume undue influence in such a case is not to presume fraud or coercion, or any act which is malicious in se, but simply the continuance of the influence which naturally inheres in and attaches to the relation itself.

We think, under these rules, that the findings of the court that there was a confidential relationship with the appellant as the dominant spirit, and that he had so failed to exercise his duty towards the weaker party to the transaction as to constitute undue influence, to be perfectly consistent with the evidence in the case. It remains but for us to consider whether or not the weaker party had such disinterested, independent and competent advice as to rebut the presumption that the transaction was the result of undue influence on the part of the appellant.

The appellant had driven his father into town for the purpose of consulting his lawyer about drawing up the lease agreement. Certainly, the advice of a member of the bar would suffice as such "disinterested, independent and competent advice" as to rebut the presumption that the lease was the product of undue influence. However, certainly any advice his lawyer gave Mr. O. L. Blanton must have been relative to the propriety or impropriety of making the transaction in order to fit the rule. The testimony of Mr. Coxwell, an honorable and truthful attorney, was to the effect that he talked with the father to get the terms the father wanted written in the lease, and, on a later occasion, to read the terms back to him so that the father could approve the terms incorporated therein. The closest he came to giving the father advice as to the propriety of the agreement was to tell him that when he added 10 years to the original lease the lease would not run out until 1975. We do not feel that this advice brings this case within the rule stated above.

We, therefore, feel that the findings of the trial court were not palpably wrong and affirm the decision of the lower court.

Affirmed.

LAWSON, GOODWYN and COLEMAN, JJ., concur.