This is an appeal from a judgment of the Circuit Court upholding the validity of a deed. We affirm.
The appellant, Letha Killough, administratrix of the estate of Charles Floyd DeVaney, commenced this action seeking to recover $16,500 from Chester Lee DeVaney, and his wife, Belva M. DeVaney. She alleged that Chester Lee DeVaney had bought 400 acres of land for $25,000 from his father, Charles Floyd DeVaney and that only $8,500 of the purchase price had been paid. She also sought to have the entire conveyance set aside on the grounds that Chester Lee DeVaney exerted undue influence on his father. Additionally, she alleged that when this transaction was consummated, Floyd DeVaney was suffering under "a weakness of mind and the infirmities of age to the extent that he did not have the necessary mental capacity to execute a deed. . . ."
Trial commenced before the court and a jury. At the conclusion of the appellant's case, the claim for damages was settled, with the defendants agreeing to pay $4,000 to the appellant. Thereafter, the jury was dismissed and the remainder of the case was tried to the court without a jury.
The trial court decided the issues of undue influence and lack of capacity in favor of the appellees.
The appellant asserts that the trial court incorrectly decided the issue of undue influence and that the court erred in denying her a jury trial. We find both of these contentions to be without merit. *Page 289 
It is established that the determination of undue influence relative to the execution of a deed depends on the facts and circumstances of each case. Brothers v. Moore, 349 So.2d 1107
(Ala. 1977). The general rule is that when parties stand in a confidential relationship and the evidence tends to show that the beneficiary is the dominant party in that relationship, the law raises a presumption of undue influence and places on the beneficiary the burden to repel the presumption when the transaction is assailed. Terry v. Terry, 336 So.2d 159 (Ala. 1976). In Fortune v. Boutwell, 271 Ala. 592, 126 So.2d 116
(1960), this court noted that
 [u]ndue influence which is required to avoid a conveyance must proceed from some act of dominance or coercion over the will of the grantor. That which results from sympathy or affection is not sufficient.
271 Ala. at 595, 126 So.2d at 118.
The relationship of parent and child is considered confidential, Brothers, supra; Wolfe v. Thompson, 285 Ala. 745,235 So.2d 878 (1970); thus the first element of the undue influence test is satisfied.
The testimony of the witnesses, taken together, tends to show that the beneficiary, Chester Lee DeVaney, was the dominant party, thus the presumption arises that undue influence was exerted. Brothers, supra. We note that this evidence does not establish the beneficiary's dominion and control beyond doubt, but rather it tends to show that because of decedent's mental infirmities and deteriorating physical condition, it is possible that undue influence was exerted. The rebuttable presumption thus arises and the burden shifts to the party seeking to uphold the conveyance to rebut the presumption. That party must show by competent and satisfactory evidence that undue influence was not exerted, i.e., "that the matter was the voluntary and well-understood act of the grantor's mind, and was fair and just." Hinson v. Byrd, 259 Ala. 459, 462,66 So.2d 736, 738 (1953).
The appellant has pointed out that there was no evidence that Floyd DeVaney received any independent advice regarding the sale of his property. It is also contended that the purchase price was grossly inadequate. However, neither the lack of independent advice, Hinson, supra, nor the inadequacy of pecuniary consideration, Hassell v. Hassell, 201 Ala. 190,77 So. 716 (1917) establishes undue influence as a matter of law.
We have reviewed all of the testimony in this case and we believe that the defendants presented sufficient evidence to rebut the presumption of undue influence.
Aside from the legal presumption of undue influence, the appellant presented no direct evidence of Chester DeVaney's alleged influence on Floyd DeVaney. The major portion of the appellant's evidence was directed at Floyd DeVaney's purported mental incapacity. The trial court's finding with respect to Mr. DeVaney's mental capacity has not been challenged on this appeal.
When the defendants presented their evidence, Mr. Albert Gratin Hester, Jr. testified that Floyd DeVaney told him that he had sold his land to his son, Chester, and that he (Floyd DeVaney) was proud to see Chester get the land since he wanted to get Chester back home from "up north." That testimony was corroborated by Gratin's wife, Mary Florence Hester. Chester Lee DeVaney testified that his father wanted to sell the property to him. His testimony was to this effect:
Q. When did you decide to buy your father's place?
A. It was the first part of `68.
Q. Where were you living at the time?
A. Muscle Shoals.
Q. Where was your father living?
A. He was living with my brother, James.
 Q. What was the occasion for your deciding to buy his place or how did it happen to be for sale?
A. Pardon?
Q. How did the farm [sic] to be for sale? *Page 290 
 A. He approached me over there at my brother's one day, wanting to sell me the place and I told him I didn't know whether I could get the money, that I had bought a place down on Red Bay Highway and I had a mortgage on it and I was making payments and we talked it over and I decided to sell my place down there and buy that.
 Q. Who first brought up the subject of your buying the farm?
A. He did.
Q. Where were you, when that happended?
A. We was at my brother's.
Q. And he was living with your brother, at that time?
A. Right.
Q. What was his mental condition?
A. Pardon?
Q. What was his mental condition?
A. It was good.
 Q. In discussing the sale of the place, did he know who you were?
A. Pardon?
Q. Did he know who you were?
A. Yes, he did.
 Q. On the day when you discussed it, who else was present?
A. Me and James was there at James' house and daddy.
On cross-examination, Chester DeVaney testified as follows:
 A. He mentioned [buying the property] in `66, I could not see no way of buying it in `66, but I didn't even know he really wanted to sell it in `66.
 Q. While you were in Ohio, he tried to sell it to you?
A. Yes.
 Q. Isn't it a fact, you told him you would come back and live with him, if he would give it to you?
A. No, I did not.
 Q. Who initiated that conversation in `66, when you were in Ohio?
A. What now?
 Q. Who started that conversation in `66, while you were in Ohio, you or your daddy?
A. My daddy did, I guess.
Q. How?
 A. He just come up and said did I want to buy the place.
Q. Where were you?
A. At my brother's.
Q. You didn't move back down here until `67?
A. Right, I come down here in `66.
 Q. Where were you in `66, when he first tried to sell it to you?
 A. When it was mentioned, I guess it was over at my brother's because that's where he stayed.
* * * * * *
 A. Well, he quoted me the price of $10,000.00 and I told him I didn't know whether I could get the money and I called my sister and all about it and they didn't want it and I went on and bought it.
Q. Did you ask your daddy what it was worth?
A. No, I didn't ask him.
Q. Did you try to determine what it was worth?
A. No, I didn't.
Q. Did you talk to Mr. James about what it was worth?
A. No, I didn't.
 Q. Mr. James didn't tell you what it was worth $50.00 an acre?
 A. No, he quoted me a price and I told him I would see if I could get the money and I would buy it.
* * * * * *
 Q. Mr. DeVaney, when your daddy proposed to sell you 400 acres of land for $12,500.00, did you, at that time, make any effort to inquire if he knew the value of the land?
 A. No, I figured if he wanted to sell it to me for $12,500.00, that's what he wanted. *Page 291 
 Q. You knew he had been offered $25,000.00 by Preston DeVaney?
A. No, I did not.
Q. Mrs. Killough didn't tell you that?
A. She did in `74, after he was deceased.
* * * * * *
 Q. So you don't consider you were taking advantage of him, when you bought his land without inquiring about the value of it?
 A. No I don't, not when he was sane. I didn't come to him, he came to me. Before I decided to buy the place, Mrs. Killough, she didn't want it, but she had bought some down there, I learned and Bobbie Jean, she didn't want none of it, they couldn't afford it she said.
This case illustrates the soundness of the ore tenus rule. Several of the witnesses were candid in admitting vagueness as to the details and chronology of this conveyance. We find this case particularly appropriate for the application of the oretenus rule.
As was stated in Jackson v. Rodda, 291 Ala. 569, 285 So.2d 77
(1973):
 Where evidence is heard orally before the trial court, the finding of the court has the effect of a jury's verdict and will not be disturbed on appeal, unless plainly erroneous, whether in law or equity. And we must affirm the trial court's decree, if fairly supported by credible evidence under any reasonable aspect, regardless of what might be our view of the evidence. . . .
291 Ala. at 571, 285 So.2d at 78, quoting Chrisman v. Brooks,291 Ala. 237, 279 So.2d 500 (1973).
The appellant argues that the issue of undue influence should have been tried to the jury instead of to the court without a jury. This suggestion was rejected in Nesmith v. Vines,248 Ala. 72, 26 So.2d 265 (1946), where the Court stated:
 In the contest of a will by bill in chancery under section 64 et seq., Title 61, Code of 1940, either party is entitled to a jury trial as a matter of right. Section 67, Title 61, Code of 1940; Lewis v. Martin, 210 Ala. 401, 98 So. 635. But a jury trial is not a matter of right in a suit in chancery to set aside a deed. Section 322, Title 7, Code of 1940; Karter v. East, 220 Ala. 511, 125 So. 655; Hill v. Lindsey, 223 Ala. 550, 137 So. 395; Tuscaloosa County v. Shamblin, 233 Ala. 6, 169 So. 234.
248 Ala. at 73, 26 So.2d at 266.
In this case, a jury trial was conducted, to the extent necessary, on the legal issues framed by the pleading. Subsequent to the resolution of these issues, the jury was dismissed and the issues of undue influence and mental incapacity were tried to the court. While the trial court might, in the exercise of its discretion, have allowed the jury to decide the issue of undue influence, its refusal to do so was not error.
For the foregoing reasons, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.