94 So.2d 386

Condie PUGH et al.

v.

Berry A. CANNON, Jr.

I Div. 694.

Supreme Court of Alabama.

March 21, 1957.

Rehearing Denied April 25, 1957.

D. R. Coley, Jr., Mobile, for appellee.

GOODWYN, Justice.

Appellee, Berry A. Cannon, Jr., filed a statutory ejectment suit in the circuit court of Mobile County against appellant Condie Pugh to recover possession of the following tract of land, to-wit:

"Beginning 550 feet East of and 1925 feet South of the Northwest corner of the Northeast Quarter of Fractional Section 12, Township 1 North, Range 1 West, in Mobile County, Alabama; thence run South 503 feet, more or less, to a point marked by a fence; thence East 210 feet to a point; thence North 503 feet to a point; thence West 210 feet to the point of beginning."

Vincent F. Kilborn, Mobile, for appellants.

On motion of Condie Pugh the cause was moved to the equity side of the circuit court. After removal, he and his wife, Allie Pugh, filed in the equity court their bill of complaint against Berry A. Cannon, Jr., alleging, in substance, the following: That complainants are husband and wife and were such in 1933; that during 1933 the respondent Berry A. Cannon, Jr., was the owner of the following real property in Mobile County, to-wit:

"Beginning 550 feet East of and 1650 feet South of the Northwest corner of the Northeast Quarter of Section 12, Township 1 North, Range 1 West and running South a distance of 858 feet, thence East 200 feet to a stake on the West side of a road, thence North along the West side of such road and parallel, or nearly so, to the Western boundary of the property here described a distance of 858 feet to a point marked by an old iron pipe, thence West and parallel to the East-West section line 200 feet to the point of beginning, which point of beginning is marked with an old iron pipe."

That in 1933 complainants were desirous of purchasing said property; that respondent informed them that said property contained five acres which he would sell to them for $15 an acre; that at that time complainants did not have funds with which to purchase said land; that respondent told complainants they could build on the land if they wanted to and could pay for it later; that there was no written agreement at that time between the parties; that complainants, relying upon such assurances of respondent, entered into possession of the land, took charge of it and placed it under fence and built their home on the north 275 feet of it; that they completed their home about the summer of 1934; that respondent then informed them that "since they had built their house on the property before complainants paid for same respondent was going to go up on the price and that complainants would have to pay respondent $25 an acre and pay at least one-half of that amount down"; that they were not willing to do this without a contract of some sort in writing; that thereupon "respondent wrote a form of a contract and caused same to be signed by Allie Pugh, one of the complainants, and while said contract was not signed by complainant Condie Pugh, yet it was understood and agreed by all the parties that it bound both Allie Pugh and Condie Pugh and respondent"; that "by the terms of said contract, they were to pay to respondent One Hundred Twenty-Five ($125.00) Dollars, Sixty-Two Dollars and Fifty Cents ($62.50) of which was paid down and the remaining balance of Sixty-Two Dollars and Fifty Cents ($62.50) and interest was to be paid in monthly installments of Fifteen Dollars and Sixty-Two Cents ($15.62) each, such contract purporting to be a contract for the purchase of the above described real property, which according to respondent contained Five (5) acres"; that complainants fulfilled the terms of said contract by paying to respondent the sum demanded; that respondent "then caused to be executed and delivered to complainants a deed, same being recorded in deed book 537 at page 392 in the office of the judge of probate, Mobile County, Alabama, and bearing date of the 5th day of July, 1935"; that "they accepted said deed delivered to them, believing the same correctly described the above described tract of land, which according to respondent contained five (5) acres of land"; that "unknown to them, the respondent gave them a deed conveying only the north 275 feet of the above described property"; that "they were unaware that respondent had not conveyed the full amount of the above described property that respondent had agreed to convey to them"; that "nevertheless they continued in possession of all of the first above described land, openly, notoriously, continuously, adversely and claimed to own the same until May of 1953", when the ejectment suit was filed by respondent against complainant Condie Pugh; that "the deed executed to them by respondent is due to be reformed to convey

to complainants the real property agreed to be sold initially to them", as first above described in the bill.

The prayer for relief is that the court "reform the deed heretofore given to Allie Pugh and Condie Pugh by respondent dated July 5, 1935, so as to cause the same to convey to complainants the entire tract of land" first above described in the bill. There is also a prayer for general relief.

The respondent answered the bill, making his answer a cross-bill, wherein he alleged, in substance, the following: That in 1933 he was the owner of the real property first described in complainant's bill; that Allie Pugh desired to purchase and he was willing to and did sell to her the north 275 feet of said property; that he conveyed said property to her by deed recorded in deed book 537, page 392, of the probate records of Mobile County; that "he denies that he was willing to sell any property to the complainant, Condie Pugh, but that said agreement to convey was entirely with the complainant, Allie Pugh; that the conveyance was made to Allie Pugh alone and that the name of Condie Pugh was inserted in said deed as a grantee after execution by him and without his knowledge or consent"; that "he denies that the complainants went into possession of the entire tract of land but that they did enter into posession of the north 275 feet, as is described in said deed, and as also conveyed by the deed hereinabove referred to"; that he "admits that the home or house was built on the north 275 feet which he had agreed to convey, but denies that he increased the price for which he had agreed to convey the land"; that "he did enter into a contract to convey the north 275 feet of the said property to Allie Pugh, but he was not willing to convey said property to Condie Pugh under any circumstances"; that he "admits that the consideration agreed upon was paid"; that the terms of the contract were complied with and pursuant thereto he executed and delivered to Allie Pugh a deed conveying said property as above set forth which Allie Pugh accepted; that "he denies that

complainants did not know exactly what land the deed conveyed but says and shows that they were fully informed and advised and knew what they were getting and that the deed was given in strict compliance with the provisions of the contract which he had entered into"; that "complainants were aware that he conveyed only the land described in said deed"; that "he denies that they were in possession of all of the land" first described in the complaint when the deed was executed and delivered "but says and shows that at that time they were in possession of only the north 275 feet thereof, as was conveyed to Allie Pugh"; that subsequent thereto the Pughs extended their fence and included within the enclosure and took possession of the property described in the bill of complaint wrongfully and unlawfully; that "he denies that the deed executed to them was not executed in strict conformity with the contract entered into by him with the complainant, Allie Pugh, but says and shows that he has in all things strictly complied with all the provisions of the contract entered into with her and that the complainants unlawfully and wrongfully are in possession of and withhold" the property sought to be recovered by respondent in the ejectment suit; that "complainants have wrongfully and unlawfully trespassed upon the property owned by him as hereinabove described and that by reason thereof he has sustained damages, in, to-wit, the sum of $500.00". The prayer of the cross-bill is for dismissal of the bill of complaint and a decree awarding to respondent and cross-complainant immediate possession of the property and also an award for the wrongful taking and holding of said property. There is also a prayer for general relief.

On the issues thus made up evidence was taken orally before the trial court, whereupon the cause was submitted and a decree rendered reciting, in pertinent part, the following:

"The Court is of the opinion that the Respondent and Cross-Complainant entered into an agreement with the

Complainants and Cross-Respondents to convey, and did convey to them by deed recorded in Deed Book 537, page 392, Probate Records of Mobile County, Alabama, the lands described as follows:

"Land beginning 550 feet East of and 1650 feet South of the Northwest corner of the Northeast Quarter of Fractional Section 12, Township 1 North, Range 1 West, thence run South 275 feet to a stake, thence East 200 feet to a stake, thence North 275 feet to a stake, thence West 200 feet to the place of beginning,

under date of July 5th, 1935, and that the Complainants and Cross-Respondents caused the said deed to be recorded in the Probate Court of Mobile County, Alabama, went into possession of said property, and have continued in possession thereof; that the land described in the said deed is the North 275 feet of the land described in Paragraph Two of the bill of complaint.

"The Court is further of the opinion that it was not the intention of the parties that the Respondent and Cross-Complainant would convey to the Complainants and Cross-Respondents any land other than that described in said deed, and that the Respondent and Cross-Complainant did not put the Complainants and Cross-Respondents in possession of any lands other than the lands described in said deed; that the Complainants and Cross-Respondents have not had such possession of the lands not included within the description of said deed or any part thereof as would vest in them title by adverse possession or prescription.

"The Court is therefore of the opinion that the Complainants and Cross-Respondents are not entitled to the relief prayed for in the bill of complaint, and it is therefore Ordered, Adjudged and Decreed by the Court that the bill of complaint be and it is hereby dismissed."

It was also decreed that the respondent and cross-complainant is the owner of and entitled to the immediate possession of the property claimed by him.

■ The appeal here is by Condie and Allie Pugh from that decree. As we understand it, they take the position that the trial court erroneously bottomed its decree on their failure to establish their right to the disputed land by adverse possession instead of basing it on a failure to establish their right to have the deed reformed. The argument seems to be that the trial court decided the case on an issue not presented by the pleadings; that the issue presented was whether the deed should be reformed; that the trial court, instead of deciding this question, based its decision on appellants' failure to establish their right to the property by adverse possession, which was not an issue; that although the evidence might not be sufficient to establish appellants' right to the property by adverse possession, it does support their insistence that the deed should be reformed.

Although the decree does recite that appellants "have not had such possession of the lands * * * as would vest in them title by adverse possession or prescription" this recital undoubtedly was made in response to the allegation in appellants' bill of complaint to the effect that after the execution of the deed in 1935 "they continued in possession of all of the first above described land, openly, notoriously, continuously, adversely and claimed to own the same until May of 1953", at which time the ejectment suit was filed by appellee against appellant Condie Pugh. As we read the decree it seems clear to us that the court expressly ruled on appellants' contention that the deed should be reformed because a mutual mistake was made in the description of the land contained therein.

■ As we see it this case presents, purely and simply, a factual issue which

was resolved against appellants. Although there are conflicts in the evidence there is ample evidence to support the trial court's findings and decree. The rule of review in cases where testimony is given ore tenus, as in this case, has been stated so many times as to be axiomatic—the judgment of the trial court has the effect of a jury's verdict and will not be disturbed on appeal unless plainly and palpably wrong. Hinson v. Byrd, 259 Ala. 459, 66 So.2d 736; Dorsey v. Dorsey, 259 Ala. 220, 66 So.2d 135; Haden v. Boykin, 259 Ala. 504, 66 So.2d 708; Huggins v. Turner, 258 Ala. 7, 60 So.2d 909. The question being fairly debatable and neither conclusively proved nor disproved, "this court, under our settled rule, will not substitute its own judgment for that of the trier of facts at nisi prius, who heard the witnesses testify and who is charged with the primary duty and responsibility of determining the matter." Forest Hill Corporation v. Latter & Blum, 249 Ala. 23, 29, 29 So.2d 298, 302. There being ample evidence to support the trial court's findings, we perceive no basis, in the light of the stated rule of review, to disturb them.

It might be well to note that the written contract for purchase dated October 15, 1934, and offered in evidence by appellants, contains no reference to any specific land to be sold by Cannon. It is at best, on the face of it, evidence only of a commitment to sell some indefinite tract, and cannot, without other evidence, be said to be an agreement to convey all of the tract which the Pughs claim should have been included in the deed but was left out through mutual mistake of the parties. As already indicated, the evidence as to the actual property intended to be included in the deed was conflicting, the factual issue presented on such conflicting evidence being resolved by the trial court against the Pughs.

Appellants further insist that it was reversible error to permit appellee, when testifying, "over objection, to write his name a number of times upon a sheet of paper and this paper was introduced in evidence and served as a basis of comparison of signature on other documents offered in evidence". What was said in Bryant v. DeKalb Warehouse Co., 260 Ala. 443, 447, 71 So.2d 51, 55, appears to be conclusive on this point, viz.:

"The rule * * * is that when a document, material to the issues, is before the court, and the controversy is as to whether the signature to it is genuine, the statute has changed the common law rule so as to admit the introduction of another document, not otherwise material but with a signature of the same person admitted or proved for the purpose of comparison to shed light on the issue as to whether the controverted signature is genuine. Section 420, Title 7, Code; Ex parte Williams, 213 Ala. 145, 104 So. 44."

The court did not err in allowing appellee to write his signature in the presence of the court and then receiving such writing in evidence for the purpose of comparing appellee's genuine signature, thus proved, with the signature on other writings material to the issues, already before the court.

The decree appealed from is due to be affirmed. So ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.