268 So.2d 818

**Bobby WARD**

v.

**Rance H. MARTIN et al.**

S. C. 45.

Supreme Court of Alabama.

Nov. 2, 1972.

Rehearing Denied Nov. 30, 1972.

James L. Shores, Jr., Birmingham, for appellant.

**548**

Barnett, Tingle & Noble, Birmingham, for appellees.

COLEMAN, Justice.

Complainant appeals from an adverse decree in a suit wherein he sought to establish and enforce a resulting trust or a constructive trust in a parcel of land.

Complainant avers that in September, 1970, he inquired of an attorney as to available sites in Center Point on which to build a shopping center; that complainant determined that he desired to acquire land near a certain intersection; and that the land was in three parcels owned separately by different owners. The parcel in suit, containing 6.82 acres, was owned by E. W. Hand and wife. It is sometimes referred to as the subject property. Another parcel containing 6 acres, on which there was a shopping center, was owned by respondents and lies on the south side of the Hand parcel. The two parcels were adjoining. The third parcel, containing a little more than one acre, adjoins the east side of the Hand parcel. The third parcel is referred to as the Rotton parcel. We are not certain that the directions north, south, east, etc., mentioned above are correct, but the directions mentioned show the relative position of these parcels to each other. The actual direction from one parcel to another is of no significance.

Complainant avers that in early October, 1970, the attorney informed respondents and one Tanner, a real estate broker, of complainant's interest in the property and arranged a meeting; that, at this meeting, respondents and Tanner agreed to act as real estate brokers with respect to any of the properties which complainant might ultimately decide to purchase; that Tanner was to have "brokerage responsibility" for the Rotton parcel and respondents were to have the responsibility for their own property and the land in suit; that respondents, Tanner, and the attorney agreed that they would divide any real estate commission realized from sales made to complainant; and that respondents stated that the only way for complainant to purchase the subject property would be for respondents to

purchase it in their own names from the Hands and then convey to complainant. The reason respondents gave for this procedure was that the Hands would sell to no one except respondents.

Complainant avers that on October 26, 1970, complainant and the attorney met with respondents and advised them that complainant desired to purchase the Hand parcel; that respondents agreed to act as complainant's agent in purchasing the Hand property by taking title in their own names and conveying same to complainant for a consideration equal to their cost plus ten per cent commission; that complainant gave the attorney a check for $1,000.00 and the attorney gave his check for $1,000.00 to respondents for the account of complainant.

Complainant avers that on December 8, 1970, respondents entered into a written agreement with the Hands to purchase the Hand parcel for $51,500.00.

Complainant avers that on December 10, 1970, complainant exercised an option to purchase the Rotton parcel for $60,000.00, which parcel was necessary for development of the subject property, and, on February 8, 1971, complainant completed the purchase of the Rotton parcel.

On December 15, 1970, at the request of one of respondents, a title company issued to respondents a title insurance binder for the subject property in amount of $57,500.-00, which sum equaled the cost of $51,500.-00 to respondents plus their commission and expense of title insurance and a survey.

Complainant avers that on December 30, 1970, respondents completed their purchase of the subject property from the Hands and recorded their deed on said date in the office of the Judge of Probate; and that respondents have refused to convey the subject property to complainant.

After hearing testimony ore tenus, the trial court rendered a decree denying relief to complainant and declaring that title to the Hand parcel is vested in respondents. In pertinent part the decree recites: ·

"The Complainant, in his amended Bill of Complaint, sought relief under the alternative theories of (1) a resulting trust being imposed in favor of the Complainant in the matter of that real estate transaction wherein Edward W. Hand and wife, Roxie Hand conveyed property in question to the Respondents as Grantees, said deed being recorded in Real Volume 672, page 731, in the Probate Office of Jefferson County, (2) a constructive trust being imposed upon the same real estate transaction in favor of the Complainant, both of said theories being subject to the payment by the Complainant to the Respondents of the sum of $56,500.00, a sum alleged to have been agreed upon by the parties.

"The Respondents in their answer deny that they purchased the property in controversy for and in behalf of the Complainant, but instead aver that they purchased the property independent of any purported agreements with the Complainant.

"Upon consideration of the pleadings and the evidence presented to the Court, the Court finds that the Complainant has failed to prove the allegations and averments in the Bill of Complaint as amended, the burden being upon him to do so."

Complainant assigns as error that the trial court erred in finding and holding that complainant failed to prove the allegations of his bill. Complainant states in brief:

"Clearly then, the law of this case is not in dispute. Its facts, however, are in serious dispute, and it is the chancellor's finding of those facts which is assigned as error on this appeal."

Complainant candidly recognizes in brief that the evidence for complainant is in hopeless conflict with the evidence for respondents. Complainant says:

"Since one side or the other is clearly lying in this case, we shall first consider

which set of witnesses is the more likely to have told the truth. . . . ."

We will not undertake to set out in any detail the evidence favorable to complainant. Complainant's evidence tends to prove the averments of his bill of complaint.

The respondents are husband and wife. The wife has been in the real estate business since 1956. She is a real estate broker but has not been engaged in real estate activities as a broker in the last ten years. During the last several years she has been handling "our loans" and developing a shopping center on the six-acre parcel owned by respondents. Respondents have seven tenants on their parcel and gross annual rent is between $21,000.00 and $22,000.00.

The wife further testified that respondents had been interested in purchasing the Hand parcel for many years and adding it to their shopping center. Respondents had discussed the matter with Mr. Hand and had a commitment from him that, if he should sell his land, he would give respondents the first chance to buy it.

The parties stipulated as follows:

"It is stipulated and agreed that the Respondents would offer as their witness Mr. E. W. Hand who was the former owner of that parcel of property described in the bill of complaint as being subject property. Mr. Hand's testimony would be substantially this, that for the last past several years the Respondents Mr. and Mrs. Martin had from time to time been discussing with him about the possibility of buying his property. He had told them on several occasions that he was not ready to sell his property but if he ever did sell the property he would give them the first refusal. His testimony would further be that on this matter his word was his bond. Mr. Hand was not familiar in any way with the negotiations between the Complainants and Respondents."

The wife testified that when the attorney first came to see respondents at their office in their shopping center, he said he was "representing" respondents in a big shopping center deal and felt sure he could get them in the neighborhood of $6,500.00 a month for their six-acre parcel; that is, respondents would lease their parcel for $6,500.00 per month or $78,000.00 per year. In later discussions, the attorney said that the people who had agreed to come in there had to have more land, and respondents told him they could get more land. The wife testified as to further negotiations.

The wife testified that in later negotiations the attorney offered respondents only $833.00 per month rent for their parcel ". . . . and we felt kind of insulted, so we quit." There is testimony as to further negotiations. The parties never reached a final agreement. No terms of the agreement between complainant and respondents were ever put in a writing signed by respondents.

The wife testified that respondents did not use any part of complainant's money as earnest money paid to Mr. Hand; and that she never saw the $1,000.00 check that the attorney claimed he gave to the husband.

The husband's testimony, in general, corroborates that of the wife. He testified that the attorney offered him a $1,000.00 check but that he refused to accept it and never endorsed the check or cashed it. He testified as follows:

"Q Now, from the time of the first proposed lease in January prepared by Mr. Ackerman until after your proposed lease was turned down on March the 18th, had you heard any talk about them wanting to buy—

"A Never.

"Q The Hand property separately from any of your other property?

"A  We never talked about that at all.

"Q  Had you ever heard any conversation of them just wanting to buy the Hand property?

"A  No, sir.

"  .  .  .  .  .  .  .  .  .

"Q  So what Mr. Ward testified to or what Mr. Ackerman testified to and what Mr. Rayburn testified to is that they met with you in October for the purpose of having you buy the property from Mr. Hand and sell it to them because you told them that Mr. Hand wouldn't sell to anybody but you, is that not true?

"A  That is not true.

"Q  You are saying what those gentlemen testified to is not true?

"A  That is what I am saying."

Complainant asserts that respondents agreed to purchase the Hand property as agents for complainant. Respondents deny that they agreed to purchase and then convey to complainant. Clearly one contention or the other is to be accepted and the other contention rejected.

█  It is established that a presumption arises in favor of the finding of the trial court when that court has seen and heard the witnesses testify. This court has said:

"The 'presumption' to which the attorneys for appellant refer is that which this court indulges in favor of the correctness of findings of fact made by trial judges where the witnesses testify orally before them. Where the testimony is so taken the findings of fact are given the weight of a jury's verdict, not to be disturbed unless plainly or palpably wrong. Barkley v. Boyd, 211 Ala. 50, 99 So. 196; Smith v. City of Dothan, 211

Ala. 338, 100 So. 501; Curb v. Grantham, 212 Ala. 395, 102 So. 619; Wiegand v. Alabama Power Co., 220 Ala. 620, 127 So. 206; Ex parte State ex rel. Grace, 224 Ala. 273, 139 So. 288; Patterson v. First Nat. Bank of Piedmont, 229 Ala. 406, 157 So. 446. Although the conclusion reached by the trial court may be different from that which this court might reach as a court of review, where the question is fairly debatable we will not substitute our judgment for that of the trier of facts at nisi prius, on whom rested the primary duty and responsibility of passing on the credibility of the witnesses who appeared and testified before him. Ex parte State ex rel. Grace, supra; Fitzpatrick v. Shine, 254 Ala. 323, 48 So.2d 220; Forest Hill Corp. v. Latter & Blum, Inc., 249 Ala. 23, 29 So.2d 298; Pugh v. Cannon, 266 Ala. 97, 94 So.2d 386. The same presumption applies even though some of the testimony was not taken orally before the trial court. Marks v. Marks, 254 Ala. 612, 49 So.2d 166; Donohoo v. Smith, 207 Ala. 296, 92 So. 455; Cox v. Somerville, 204 Ala. 261, 85 So. 525; Moore v. Walker, 201 Ala. 629, 79 So. 191; Faulkner v. Fowler, 201 Ala. 685, 79 So. 257." Farmers & Ginners Cotton Oil Co. v. Hogan, 267 Ala. 248, 252, 253, 100 So.2d 761, 764.

█  There is testimony which, if true, supports the finding of the trial court in the instant case. Under the rule of review long followed by this court and the presumption referred to above, the decree appealed from is due to be affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, BLOODWORTH and McCALL, JJ., concur.